1-97-2761 

SECOND DIVISION

MAY 5, 1998

BOARD OF TRUSTEES OF COMMUNITY COLLEGE, ) APPEAL FROM

DISTRICT NO. 508, COUNTY OF COOK, )   THE CIRCUIT COURT

) COOK COUNTY.

)

Plaintiff, )

)

)   No. 95 L 9862

v. ) 

)

COOPERS AND LYBRAND LLP, )  THE HONORABLE

                    )  DAVID G. LICHTENSTEIN

Defendant. )  JUDGE PRESIDING.

)

)

ARTHUR ANDERSEN LLP, )

)

Defendant and Third-party )

 Plaintiff-Appellant; ) 

)

)

Ronald Gidwitz, Terry E. Newman, )

James A. Dyson, Theresa Fraga, )

Edward W. Czadowski, Ferdinand W. )

Hargrett, Ralph G. Moore, )

Michael G. Mayo, Robert M. Weissbourd, )

Robert C. Rogers, Michael Wagner and )

Gary G. Lonquist, )

)

Third-Party Defendants-Appellees). )

JUSTICE COUSINS delivered the opinion of the court:

Third-party plaintiff-appellant Arthur Anderson LLP appeals from the lower court’s dismissal of its third-party complaint for contribution against third-party defendants-appellees who are the individual officers and/or members of the Board of Trustees of Community College District No. 508, County of Cook, State of Illinois, commonly known as the City Colleges of Chicago (City Colleges) and employees of the City Colleges.  On appeal, Arthur Anderson contends that the trial court erred in dismissing its third-party complaint pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-619 (West 1992)) because: (1) its claims were not barred by the Illinois Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/1-101 
et
 
seq.
 (West 1992)); (2) the third-party defendants are liable for the same injury as that for which the City Colleges seeks recovery from Arthur Anderson; and (3) the third-party defendants are not identical to the plaintiff.

BACKGROUND 

On June 13, 1995, the Board of Trustees of Community College District No. 508 (the Board) filed a complaint against its former auditors, Arthur Anderson LLP (Arthur Anderson) and Coopers & Lybrand LLP (Coopers & Lybrand), alleging professional malpractice, negligent misrepresentation and breach of contract.  The Board alleged that the auditors failed to detect and/or report that the City Colleges' treasurer was engaged in illegal, inappropriate and highly risky trading practices and that the treasurer's actions violated Illinois law and the Board’s investment policy.  The Board further alleged that, had the auditors reported such violations to the Board, subsequent losses in excess of $50 million would have been avoided.  

Coopers & Lybrand answered the Board’s complaint and asserted affirmative defenses.  On November 30, 1995, Arthur Andersen answered and denied the allegations of the complaint and pled counterclaims against individual members of the Board for contribution, breach of fiduciary duty and breach of misrepresentation.  On January 10, 1997, Arthur Andersen filed its second amended third-party complaint seeking 
contribution under the Illinois Joint Tortfeasor Contribution Act (740 ILCS 100/2(a) (West 1992)) from current board members, Ronald Gidwitz, Terry E, Newman, James A, Dyson, Theresa Fraga, Edward W. Czadowski, Ferdinand W. Hargrett, and Ralph G. Moore; former board members Michael N. Mayo and Robert M. Weissbourd; current City Colleges employees Robert C. Rogers, Michael Wagner and Gary C. Lonquist; and former City Colleges employee Leonard Sippel.     In count I of its second amended third-party complaint, Arthur Andersen alleged that the third-party defendants were reckless and negligent in supervising the investment activities of the City Colleges’ former treasurer.  In count II, Arthur Andersen alleged that third-party defendants Rogers and Sippel failed to determine whether the City Colleges' investment portfolio complied with its investment policy and applicable Illinois laws.  Arthur Andersen also alleged, in the alternative, that the Board failed to exercise reasonable care in making its own independent determinations as to whether the City Colleges' investments complied with its investment policy and applicable laws.  In count III, Arthur Andersen alleged common law fraud against third-party defendants Wagner and Lonquist.

On February 5, 1997, the third-party defendants filed a combined motion to strike and dismiss counts I, II and III of Arthur Andersen’s second amended third-party complaint pursuant to section 2-615 of the Illinois Code of Civil Procedure (735 ILCS 5/2-615 (West 1992))(the Code), and to dismiss counts I and II pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 1992)).  On June 18, 1997, Arthur Andersen was given leave to withdraw count III of its complaint.

After a hearing on the motions, the trial court mailed to the parties a written order dated June 18, 1997, granting the third-party defendants’ motion to dismiss Arthur Andersen’s third-party claims for contribution pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-619 (West 1992)).  In its order the trial court stated in pertinent part:

"Plaintiff may not seek contribution from these third-party defendants, for at least three separate reasons: 1) The so-called ‘third party defendants’ are not third parties at all.  ‘They’ are the plaintiff.  The Board acts through its officers and employees.  2) For a contribution claim to lie the joint tortfeasors must be liable for the ‘same injury’.  Here, the injury complained of by the plaintiff is the failure of Andersen to detect and to bring to the attention of the Board that State investment statutes were being violated.  This injury would exist even if the violation of the State investment statute had caused the Board to earn money. *** Andersen’s negligence and wanton and wilful conduct claims ignore the question of injury and instead focus on the question of damages.  This is insufficient to state a contribution claim. [Citation.]

3) Notwithstanding a lot of confusing language in Illinois case law about the contribution act [
sic
] applying in cases where statutory or judicial immunities would defeat a direct action against a party from whom contribution is sought, [citations], public policy considerations require a different result when officials act on behalf of the public, as is here the case with officers and employees of the  community colleges system. [Citations.]”

Arthur Andersen now appeals from the trial court’s order dated June 18, 1997.  

We affirm.

OPINION

I

The trial court granted the third-party defendants’ motion to dismiss Arthur Andersen’s third-party claims for contribution pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-619 (West 1992)).  We review the trial court's ruling under both of these sections 
de
 
novo
. See 
Weatherman v. Gary-Wheaton Bank of Fox Valley, N.A.
, 286 Ill. App. 3d 48, 63, 676 N.E.2d 206 (1996); 
Hutson v. Hartke
, 292 Ill. App. 3d 411, 413, 686 N.E.2d 734 (1997).   

Arthur Andersen contends that the trial court erred in finding that the Illinois Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/1-101 
et
 
seq
. (West 1992)) (the Tort Immunity Act) applies to the third-party defendants' conduct.  

In the trial court, the third-party defendants claimed that they were immune from suit under one or more of sections 2-201, 2-202, 2-204 and 2-205 of the Tort Immunity Act.  745 ILCS 10/2-201, 2-202, 2-204, 2-205 (West 1992).  Arthur Andersen contends that the trial court erred in dismissing its third-party complaint because there is nothing on the face of its third-party complaint that demonstrates the applicability of the Tort Immunity Act.  Rather, Arthur Andersen asserts that the case should have proceeded to trial because the affirmative defense of statutory immunity requires proof of requisite supporting facts. Arthur Andersen further contends that the Tort Immunity Act is inapplicable because none of the Act's provisions apply to the conduct alleged.  Finally, Arthur Andersen argues, in the alternative, that specific factual allegations of willful and wanton conduct that defeat the asserted immunities were sufficiently pled.  

The trial court did not cite a specific section of the Tort Immunity Act in its ruling dismissing Arthur Andersen's contribution action.  However, we note that the trial court's decision to dismiss the third-party complaint can be sustained on any ground warranted, regardless of whether the trial court specifically relied upon such ground.  
Messenger v. Edgar
, 157 Ill. 2d 162, 177, 623 N.E.2d 310 (1993).  We believe the trial court properly dismissed Arthur Andersen's third-party complaint as the complaint established, on its face, that the third-party defendants were immune from liability under section 2-201 of the Tort Immunity Act.  Furthermore, we believe that Arthur Andersen did not sufficiently plead allegations of willful and wanton conduct that would bar the asserted immunities.

Under section 2-201 of the Tort Immunity Act, a public employee is immune from liability for a determination of policy or the exercise of discretion.  745 ILCS 10/2-201 (West 1992).   

Section 207 of the Tort Immunity Act provides that a public employee is an employee of a local public entity.  745 ILCS 10/1-207 (West 1992).   The City Colleges is a local public entity pursuant to the Illinois Public Community College Act (110 ILCS 805/1-1 
et
 
seq.
 (West 1992).  Furthermore, as the board of a community college district, the third-party defendants who comprise the Board in this case constitute a local public entity within the meaning of section 1-206 of the Tort Immunity Act.  745 ILCS 10/1-206 (West 1992).  Section 2-201 of the Tort Immunity Act provides:

"Except as otherwise provided by Statute, 
a public employee
 serving in a position involving the determination of policy or the 
exercise of discretion
 is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." (Emphasis added.)  745 ILCS 10/2-201 (West 1992).

When application of the doctrine of public official immunity is urged, the critical question is whether the employee's conduct was "discretionary" or merely "ministerial," with the employee or government official incurring liability only where the actions at issue were not "discretionary."  
McKay v. Kusper
, 252 Ill. App. 3d 450, 460, 624 N.E.2d 1140 (1993).  Discretionary acts are those that require personal deliberation, decision and judgment, while ministerial acts are those amounting to the performance of a task in accordance with an order.  
Bonnell v. Regional Board of School Trustees
, 258 Ill. App. 3d 485, 489, 630 N.E.2d 547 (1994).  Immunity will not attach unless the injury alleged results from an act performed or omitted by the employee in determining policy and in exercising discretion.  
Harinek v. City of Chicago
, No. 82155 (February 20, 1998).  

In its third-party complaint, Arthur Andersen alleged that, at the time the alleged conduct occurred, each third-party defendant was either a board member or employee of the City Colleges.  In addition, Arthur Andersen alleged, 
inter
 
alia
, that the third-party defendants determined that the City Colleges should undertake an investment strategy.  The complaint further alleged that the third-party defendants "knowingly approved of certain investments because of the greater returns they were expected to provide," "ratified [the treasurer's] actions and investment approach," failed to appoint a competent treasurer with formal financial training and failed to either inform themselves of the composition of their investment portfolio, or failed to exercise reasonable care in making their own independent determinations as to whether their investments complied with the applicable laws.  We believe that Arthur Andersen's complaint established, on its face, that the third-party defendants were public employees who were immunized from liability under the Tort Immunity Act.  In our view, the alleged conduct describes acts and omissions of the third-party defendants as they acted in their official capacities as public employees for the City Colleges in determining policy and in making discretionary decisions pursuant to that policy within the meaning of section 2-201 of the Tort Immunity Act.

At oral argument, Arthur Andersen argued that the third-party defendants were not immune under the Act because they were not sued in their official capacities as public employees.  Arthur Andersen's argument is illogical and inconsistent with the allegations made in its complaint.  Throughout its pleadings and in the briefs on appeal, Arthur Andersen never alleged or argued that the third-party defendants acted other than in their official capacities.  For example, in paragraph 60 of its third-party complaint, Arthur Andersen alleged: "At all relevant times, 
by virtue of their positions as officers
 having significant responsibility for financial matters, third-party defendants Rogers, Lonquist and Wagner knew or recklessly failed to know the composition of City Colleges' investment portfolio ***." (Emphasis added.)   We fail to see how the conduct alleged occurred outside the third-party defendants' capacities as City Colleges employees and/or board members.  

Furthermore, it is our view that Arthur Andersen's allegations that the third-party defendants acted in a willful and wanton fashion are simply not cogent.  Section 2-202 of the Tort Immunity Act provides:

"A public employee is not liable for his act or omission in the execution or enforcement of any law 
unless such act or omission constitutes willful and wanton conduct
." (Emphasis added.) 745 ILCS 10/2-202 (West 1992).

Arthur Andersen maintains that the trial court erred in dismissing its complaint under section 2-202.  We disagree.  Section 1-210 of the Tort Immunity Act defines willful and wanton conduct as "a course of action which shows an actual or deliberate intention to cause harm, or if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property."  745 ILCS 10/1-210 (West 1992).  After reviewing Arthur Andersen's third-party complaint, it is our view that Arthur Andersen failed to plead specific facts that show that the third-party defendants acted intentionally, or with a conscious disregard for the well-being of the City Colleges' investments.  Moreover, we agree with the third-party defendants that Arthur Andersen's allegations sound more in ordinary negligence than willful and wanton misconduct.  Absent specific claims of willful and wanton misconduct, the third-party defendants are immune from liability for the conduct of which Arthur Andersen complains.

II

 Arthur Andersen also contends that even if the third-party defendants' conduct is protected by the Tort Immunity Act, its action for contribution prevails over that immunity.   We disagree. 

The Illinois Supreme Court adopted the doctrine of contribution among joint tortfeasors in 
Skinner v. Reed-Prentice Division Package Machinery Co.
, 70 Ill. 2d 1, 374 N.E.2d 437 (1977).  The 
Skinner
 decision was later codified by the legislature in the Illinois Contribution Joint Tortfeasor Contribution Act (740 ILCS 100/0.01 
et
 
seq.
 (West 1992)
) (the Contribution Act).  Section 2(a) of the Contribution Act provides:

"Except as otherwise provided in this Act, where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among them, even though judgment has not been entered against any or all of them." 740 ILCS 100/2(a) (West 1992).

The right to contribution is premised on the notion that a party should not be forced to pay more than its proportionate share of a liability shared with another culpable party.  
Ramsey v. Morrison
, 175 Ill. 2d 218, 224, 676 N.E.2d 1304 (1997).  The right to contribution, however, will occasionally clash with an immunity from direct suit possessed by the party from whom contribution is sought.  
Ramsey
, 175 Ill. 2d at 225.  For example, in 
Doyle v. Rhodes
, 101 Ill. 2d 1, 461 N.E.2d 382 (1984), the Illinois Supreme Court held that a party's immunity from direct suit by the plaintiff may not necessarily immunize that party from a contribution claim by a defendant sued by the plaintiff.  However, the supreme court later held in 
Ramsey v. Morrison
, 175 Ill. 2d 218, 676 N.E.2d 1304 (1997), that the right of contribution will not always prevail over the competing immunity.  The supreme court instructed courts to balance the policy considerations supporting contribution against those supporting immunity to determine which doctrine should prevail in a particular case.  
Ramsey
, 175 Ill. 2d at 225.  Accordingly, Illinois courts have balanced such policy concerns in cases where the law of contribution has clashed with statutory immunities that would defeat direct actions.  

In some cases, the law of contribution has prevailed over immunity principles.  See 
Doyle v. Rhodes
, 101 Ill. 2d 1, 461 N.E.2d 383 (1984); 
Stephens v. McBride
, 97 Ill. 2d 515, 455 N.E.2d 54 (1983); 
Moon v. Thompson
, 127 Ill. App. 3d 657, 469 N.E.2d 365 (1984); 
Hartigan v. Beery
, 128 Ill. App. 3d 195, 470 N.E.2d 571 (1984).  However, many of these cases involved interspousal or parent-child immunity in which the appellate courts held that the relationships sought to be protected by the immunity were not affected by the third-party suit to any extent greater than that already allowed by law.  See 
Hartigan v. Beery
, 128 Ill. App. 3d 195, 470 N.E.2d 571 (1984); 
Moon v. Thompson
, 127 Ill. App. 3d 657, 469 N.E.2d 365 (1984).  For example, in 
Moon v. Thompson
, 127 Ill. App. 3d 657, 464 N.E. 2d 365 (1984), the appellate court held that parent-child immunity did not bar a contribution action.  There, the minor plaintiff, while riding his bicycle, was struck by an automobile driven by the defendant.  The defendant then sought contribution from the minor's parents, alleging that they were negligent in failing to fulfill a statutory duty to instruct their child in regard to the laws pertaining to the operation of a bicycle by a child under section 11-1501(b) of the Illinois Vehicle Code (Ill. Rev. Stat. 1977, ch. 95 1/2, par. 11-1501(b)).  
Moon
, 127 Ill. App. 3d at 658.  The parents argued that a parent's authority, discretion and control in rearing a child should prevail over the Contribution Act.  The appellate court disagreed and held that the discretion and control of the parents were already circumscribed by the legislature's imposition of a specific statutory duty to oversee their child's actions with respect to the operation of a bicycle.  The appellate court also noted that the parent-child immunity doctrine is a doctrine that has been steadily eroded by Illinois courts. 
Moon
, 127 Ill. App. 3d at 661.

In other cases, however, the immunity has prevailed over the law of contribution.  See 
Buell v. Oakland Fire Protection District Board
, 237 Ill. App. 3d 940, 605 N.E.2d 618 (1992)(holding that the public policy considerations supporting public officials' immunity required that the immunity be applied to bar contribution actions as well as direct actions); 
Stephens v. Cozadd
, 159 Ill. App. 3d 452, 512 N.E.2d 812 (1987); 
Lietsch v. Allen
, 173 Ill. App. 3d 516, 527 N.E.2d 978 (1988); 
Martin v. Lion Uniform Co.
, 180 Ill. App. 3d 955, 536 N.E.2d 736 (1989).  In 
Buell
, the appellate court held that the policies underlying statutory immunity granted to public service rescue services outweighed the policies supporting the law of contribution.  
Buell
, 237 Ill. App. 3d at 943-44.

In the case 
sub
 
judice
, we must balance the policy considerations supporting immunity for government officials under the Tort Immunity Act against the policy considerations supporting the law of contribution.  We believe 
Stephens v. Cozadd
, 159 Ill. App. 3d 452, 512 N.E.2d 512 N.E.2d 812 (1987), cited by the third-party defendants, is instructive.

In 
Stephens
, the appellate court held that the common law public officials' immunity barred a contribution action against a flagman on a state highway crew.  The court noted that the doctrine of immunity for public officials is based upon the policy that public officials should be shielded from liability so that they are free to exercise their judgment based solely on their perception of the public's needs.  
Stephens
, 159 Ill. App. 3d at 456.  The appellate court stated:

"[P]ublic officials' immunity is grounded on the belief that officials ought to be shielded from personal liability for decisions made and actions taken in the performance of their employment.  If a public official is haunted by the possibility of facing devastating personal liability for each employment decision and action which may inadvertently cause harm to another, employee performance will most certainly be hampered and, indeed, it may be difficult to find individuals willing to serve as public officials." 
Stephens
, 159 Ill. App. 3d at 458.

We believe that the policy considerations detailed in 
Stephens
 are present in the instant case.  The purpose of the Tort Immunity Act is to protect local governments and their employees from liability arising out of the operation of government.  
DiMarco v. City of Chicago
, 278 Ill. App. 3d 318, 322, 662 N.E.2d 525 (1996).  The board members in the instant case are public servants who serve without compensation. See section 3-7 of the Public Community College Act (110 ILCS 805/3-7 (West 1992)).   The possibility of incurring multimillion dollar liability could chill their willingness and deter them from providing such a service.  Such public policy considerations require that the Tort Immunity Act prevail over Arthur Andersen's right to contribution.  Therefore, we hold that the trial court was correct in finding that the asserted immunities should prevail and in dismissing Arthur Andersen's contribution action.   III

Arthur Andersen also argues that the trial court erred in holding that the injury for which it seeks contribution is not the same injury as that for which the Board seeks recovery from Arthur Anderson.  We disagree. 

Section 2(a) of the Contribution Act provides that there is a right of contribution among joint tortfeasors where "2 or more persons are subject to liability in tort arising out of the 
same injury
 to person or property."  (Emphasis added.)  740 ILCS 100/2(a) (West 1992).  Moreover, under section 2-406 of the Illinois Code of Civil Procedure (735 ILCS 5/2-406 (West 1994)), a third-party action cannot be used to maintain an entirely separate and independent claim against a third party, even if that claim arises out of the same general set of facts as the main claim.  
People v. Brockman
, 143 Ill. 2d 351, 364-65, 574 N.E.2d 626 (1991).  

Here, the injury that the plaintiff, the Board, complains of is the failure of Andersen to detect that state investment statutes and the Board's investment policy were being violated.  However, Arthur Andersen seeks contribution for the alleged failure of individual members of the Board and employees of the City Colleges to appoint a competent treasurer, to conduct independent review of the various investments, or to conduct reasonable review of their investments.  In our view, Arthur Andersen improperly attempts to seek contribution for an entirely separate and independent claim and fails to seek contribution for a liability in tort arising out of the same injury from that which the plaintiff seeks from Arthur Andersen, as is required under the Contribution Act.  Accordingly, the trial court was correct in dismissing Arthur Andersen's third-party complaint on that basis.

Arthur Andersen finally argues that the trial court erred in ruling that the third-party defendants are identical to the plaintiff, the Board.  We see no error in the trial court's decision.  

Section 2-406 of the Code is the procedural device that enables a defendant in a lawsuit to bring an additional party into an action and provides as follows:

"[A] defendant may by third-party complaint bring in as a defendant a person not a party to the action who is or may be liable to him or her for all or part of the plaintiff's claim against him or her."  735 ILCS 5/2-406(b) (West 1994).

A proper third-party action requires derivative liability where 
the liability of the third-party defendant is dependent on the liability of the third-party plaintiff to the original plaintiff.  
Brockman
, 143 Ill. 2d at 368.  Accordingly, the basis for most third-party actions has been indemnity or contribution.  
Kerschner v. Weiss & Co.
, 282 Ill. App. 3d 497, 502, 667 N.E.2d 1351 (1996).   The Contribution Act contemplates the sharing of common liability by two or more parties who are jointly responsible for the injury suffered by the plaintiff.  
Kerschner
, 282 Ill. App. 3d at 505.  

In the instant case, Arthur Andersen's third-party action is not based on derivative liability because the third-party defendants are not jointly liable in tort with Arthur Andersen for the claims asserted by the Board in the underlying action.  There is no allegation in the third-party complaint that Arthur Andersen and the third-party defendants, who constitute the Board, are both responsible for the same injury to the Board.  Rather, the essence of the allegations in Arthur Andersen's complaint is that the Board's alleged injury of $50 million dollars is actually caused by the Board's own actions in failing to review the actions of its treasurer.  Thus, because Arthur Andersen fails to allege joint liability among two or more parties for a common injury, there is no right of contribution between Arthur Andersen and the individually named board members and employees of the City Colleges.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.