EMMA J. ROBINSON *et al.*, Plaintiffs-Appellants, v. TOYOTA MOTOR CREDIT CORPORATION *et al.*, Defendants-Appellees.

First District (4th Division) No. 1—98—3041

Opinion filed August 24, 2000.

Joseph A. Longo, of Mount Prospect, for appellants.

Quinlan & Crisham, Ltd., of Chicago (Thomas M. Crisham and Jean M. Prendergast, of counsel), for appellees.

JUSTICE HALL delivered the opinion of the court:

Plaintiffs, Emma J. Robinson and Latanya Kemp, appeal from the dismissal with prejudice of their second amended complaint. Plaintiffs sued defendants, Toyota Motor Credit Corporation, Point One Toyota, Evanston, and River Oaks Toyota, contending that motor vehicle lease agreements between plaintiffs and defendants violated various federal and state laws. Plaintiffs sought relief for themselves and for a class of people similarly situated. For the following reasons, we affirm in part, reverse in part, and remand for further proceedings.

On July 6, 1993, plaintiff Emma Robinson entered into a 48-month closed-end motor vehicle lease agreement with defendant River Oaks Toyota. On May 14, 1993, plaintiff Latanya Kemp entered into a similar 42-month lease agreement with defendant Point One Toyota, Evanston. Both leases were assigned to defendant Toyota Motor Credit Corporation (Toyota).

Prior to the pendency of this case, plaintiffs were members of a class action entitled *Mortimer v. River Oaks Toyota, Inc.*, No. 91 L 18043 (*Mortimer*), which involved similar claims against Toyota. Plaintiffs opted out of the *Mortimer* class action and settlement. On

August 31, 1995, plaintiffs filed an eight-count complaint against defendants, alleging that the lease agreements entered into between plaintiffs and defendants violated the federal Consumer Leasing Act (15 U.S.C. §§ 1667a, 1667b (1994)) and various Illinois state laws. On May 23, 1996, the circuit court granted, in part, Toyota's motion to dismiss plaintiffs' complaint. Plaintiffs filed their first amended complaint in June 1996.

On June 13, 1996, plaintiffs filed a motion seeking class certification in the case at bar. Toyota responded on September 4, 1996, that plaintiffs' motion should be denied because the superior court for the State of California had already certified a nationwide class that included plaintiffs, in Ramirez v. Toyota Motor Credit Corp., No. 752044—8 (*Ramirez*). On October 1, 1996, Toyota filed additional materials showing: the California class action had been pending since 1995; the class in that action was certified on February 21, 1996, to include all individuals who had leased a vehicle pursuant to a Toyota lease agreement in the United States after August 1, 1993, or who opted out of the *Mortimer* class action; and plaintiffs were members of that class. In August 1996, Toyota mailed notices of the *Ramirez* class action to all identifiable class members, including plaintiffs. The opt-out deadline in *Ramirez* was September 2, 1996. Both plaintiffs sent notice of their desire to be excluded from the *Ramirez* class action and settlement on September 5, 1996, after the deadline.

On October 2, 1996, the circuit court entered an order granting Toyota leave to file a motion to dismiss plaintiffs' first amended complaint. The circuit court also told plaintiffs' counsel that the court would give him an opportunity to try to extricate his clients from the *Ramirez* class action.

In December 1996, plaintiffs filed motions in the *Ramirez* case to extend the opt-out period and to modify the class definition. The California court denied both motions.

On January 17, 1997, Toyota filed a motion to dismiss plaintiffs' first amended complaint pursuant to section 2—619 of the Illinois Code of Civil Procedure (735 ILCS 5/2—619 (West 1996)), based upon their status as *Ramirez* class members. Plaintiffs filed a motion to allow the case to proceed. On January 23, 1997, the circuit court granted Toyota's motion and dismissed plaintiffs' first amended complaint. The circuit court stated that the plaintiffs could petition the court for leave to reinstate their action if a California appellate court reversed the decisions of the superior court of California which denied plaintiffs' motions to extend the opt-out period or redefine the class in the *Ramirez* case.

On January 27, 1997, the *Ramirez* court entered an order stating:

"As a matter of law the court finds that California statutory and common law cannot be applied to claims of class members whose lease transactions were negotiated and entered into within the borders of foreign states ***. This ruling does not bar nonresident class members from bringing actions for their claims under the applicable laws of the states in which they entered into their leases."

Because this order confirmed that non-Californian class members could pursue their own lawsuits, plaintiffs moved the circuit court in Illinois to reinstate their case. On May 7, 1997, the circuit court denied plaintiffs' first motion to reinstate.

On July 9, 1997, Toyota's counsel sent plaintiffs' counsel a letter offering to allow plaintiffs to opt out of the *Ramirez* class. Plaintiffs rejected this offer.

On August 13, 1997, plaintiffs filed their second motion to reinstate. On September 24, 1997, the circuit court denied plaintiffs' second motion to reinstate, holding that the *Ramirez* order "does not bar plaintiffs from bringing actions for their claims under Illinois law. However, the ruling does not go further to state that these claims may be brought in Illinois courts." The circuit court denied plaintiffs' second motion to reinstate without prejudice so plaintiffs could refile the motion if they procured an order from the California court specifically decertifying them from the *Ramirez* action for the purpose of pursuing their Illinois claims in an Illinois court.

On December 30, 1997, plaintiffs filed their third motion to reinstate. Simultaneously, plaintiffs filed a motion to decertify in the California court in *Ramirez.* On February 6, 1998, the California court denied plaintiffs' motion to decertify but entered the following order:

"IT IS HEREBY ORDERED that the motion to Decertify Ms. Robinson and Ms. Kemp is DENIED. However, based on the Court's ruling re: Motion for Summary Adjudication of Issues dated January 27, 1997, the court hereby orders that each of the petitioners herein, i.e., Robinson and Kemp, may continue or file his or her own lawsuit against Toyota Motor Credit Corporation in the State of Illinois based upon violations of Illinois law. This court does not address any right to pursue claims under Federal law."

In September 1997, the *Ramirez* plaintiffs filed their second amended complaint. On December 10, 1997, the *Ramirez* court dismissed the action pursuant to the settlement agreement executed by the parties in that case and entered its final judgment order. Plaintiffs' counsel participated in the December 10, 1997, hearing in the *Ramirez* case and did not object to the settlement.

Following entry of the February 6, 1998, order in *Ramirez,* the circuit court in this case granted plaintiffs' third motion to reinstate.

In April 1998, plaintiffs filed their second amended complaint alleging violations of the federal Consumer Leasing Act (15 U.S.C. §§ 1667a, 1667b (1994)), the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 1996)), the Uniform Deceptive Trade Practices Act (815 ILCS 510/1 *et seq.* (West 1996)), and breach of contract. Plaintiffs sought relief for themselves and for a class of people similarly situated.

The circuit court dismissed plaintiffs' second amended complaint pursuant to sections 2—615 and 2—619 of the Code of Civil Procedure (735 ILCS 5/2—615, 2—619 (West 1996)). Plaintiffs appeal. We review the circuit court's ruling under both of these sections *de novo. Board of Trustees of Community College, District No. 508 v. Coopers & Lybrand LLP,* 296 Ill. App. 3d 538, 696 N.E.2d 3 (1998).

On appeal plaintiffs contend that: (1) the circuit court erred in finding that plaintiffs' federal Consumer Leasing Act claims were barred by the doctrine of *res judicata*; (2) the circuit court erred in finding that plaintiffs failed to state a cause of action under the Illinois Consumer Fraud and Deceptive Business Practices Act; (3) the circuit court erred in finding that plaintiffs failed to state a cause of action under the Uniform Deceptive Trade Practices Act; and (4) that the circuit court erred in dismissing plaintiffs' breach of contract claim.

Plaintiffs first contend that the circuit court erred in finding that their federal Consumer Leasing Act (CLA) claims were barred by the doctrine of *res judicata.* Plaintiffs alleged that defendants violated the CLA by failing to clearly and conspicuously disclose their early termination procedures and penalties, other charges, the express warranties in the lease, trade-in allowances, and guaranteed automobile protection (GAP) charges; by specifically disallowing early termination; by using an overly complicated lease; by charging plaintiffs a double penalty; and by disclosing total estimated taxes of $168, but then assessing a monthly payment which resulted in the payment of $1,242 in taxes.

■ Under the doctrine of *res judicata,* a final judgment on the merits rendered by a court of competent jurisdiction acts as a bar to a subsequent suit between the parties involving the same cause of action. *River Park, Inc. v. City of Highland Park,* 184 Ill. 2d 290, 703 N.E.2d 883 (1998); *Rein v. David A. Noyes & Co.,* 172 Ill. 2d 325, 665 N.E.2d 1199 (1996). For the doctrine to apply, the following three requirements must be satisfied: (1) there was a final judgment on the merits rendered by a court of competent jurisdiction, (2) there is an identity of parties or their privies, and (3) there is an identity of causes of action. *River Park,* 184 Ill. 2d at 302.

A final judgment on the merits was rendered by a court of competent jurisdiction on December 10, 1997, when the California superior court entered an order approving the settlement agreement in *Ramirez*. There was also an identity of parties as plaintiffs, Robinson and Kemp, were members of the class in *Ramirez*. Plaintiffs contend that there was no identity of parties because Point One and River Oaks, which are defendants in the present action, were not defendants in *Ramirez*. The *Ramirez* settlement agreement, however, provides that plaintiffs are party to the agreement with Toyota "and all of its parent, affiliated, subsidiary companies and assignors (including Toyota and Lexus dealers)." We find that the first two elements of *res judicata* have been satisfied.

The real issue is whether there is an identity of causes of action between *Ramirez* and the case at bar. Plaintiffs contend that the *Ramirez* settlement agreement only barred CLA claims regarding auction, transportation and reconditioning fees. Plaintiffs maintain that because the CLA claims alleged in the present case are not based upon those fees, there is no identity of causes of action between *Ramirez* and the case *sub judice*. We disagree.

■ A cause of action is defined by the facts that give a plaintiff a right to relief. *Rein*, 172 Ill. 2d at 338. When determining whether there is an identity of causes of action, Illinois courts apply the transactional test. *River Park*, 184 Ill. 2d at 311. Under this approach, a claim is viewed in factual terms. Separate claims will be considered the same cause of action for purposes of *res judicata*, if they arise from a single group of operative facts, regardless of whether they assert different kinds or theories of relief. *River Park*, 184 Ill. 2d at 311.

Plaintiffs are members of the *Ramirez* class based upon the 1993 lease agreements assigned to Toyota and their status as *Mortimer* opt-outs. Plaintiffs' 1993 leases provide the basis for plaintiffs' inclusion in the *Ramirez* class action. The exact same leases are attached to plaintiffs' second amended complaint in the present case and provide the basis for plaintiffs' current CLA claims against Toyota. The core operative facts for plaintiffs' causes of action in *Ramirez* and in the present case are identical—federal Consumer Leasing Act violations arising from plaintiffs' 1993 leases with defendant.

The *Ramirez* second amended complaint alleged that Toyota violated the CLA by failing to fully disclose a lessee's liability for auction, transportation, and recording fees upon early termination of the lease. The fact that all of plaintiffs' present CLA claims were not raised in *Ramirez* is irrelevant for *res judicata* purposes. The *res judicata* bar extends to what was actually decided in the first action, as well as to matters that could have been decided in that suit. *River*

*Park*, 184 Ill. 2d at 302. The question then becomes whether plaintiffs' CLA claims could have been raised in *Ramirez*.

■ We find first that plaintiff Kemp's claim that defendants violated the CLA by disclosing total estimated taxes of $168 and then assessing monthly payments that resulted in taxes of $1,242 is not barred by *res judicata*. This is an individual claim, not common to the class, that could not have been raised in *Ramirez*. A class action cannot be used for each class member to litigate his or her own individual claims but, rather, is a forum to litigate issues common to the class.

Plaintiffs' other CLA claims do not involve individual claims but, rather, involve common issues regarding defendants' leases. Moreover, these claims have the same core of operative facts as do the claims in *Ramirez*. Consequently, we find that plaintiffs' CLA claims, other than the claim for the overcharged taxes, could have been raised in *Ramirez* and are now barred by the doctrine of *res judicata*.

The fact that plaintiffs' claims could have been asserted in *Ramirez* is further demonstrated by the fact that plaintiffs are class members with knowledge of the events in the case. Through their attorney, plaintiffs actively participated in the *Ramirez* action for over a year. Plaintiffs' attorney even participated in the approval hearing for the settlement agreement on December 10, 1997. Plaintiffs did not object to the settlement agreement and did not request to be exempt from it.

Plaintiffs' claim that they never received notice of the *Ramirez* second amended complaint is irrelevant and belied by the record. The *Ramirez* settlement agreement provides that the parties agreed to seek leave to file the second amended complaint. Moreover, the settlement agreement expressly incorporates the second amended complaint. Plaintiffs' counsel participated in the final approval hearing and had ample opportunity to object to the settlement agreement and/or the second amended complaint. As members of the class, plaintiffs are bound by the terms of the judgment. *Mortimer v. River Oaks Toyota, Inc.*, 278 Ill. App. 3d 597, 663 N.E.2d 113 (1996).

Plaintiffs make several arguments regarding *res judicata* that must be rejected.

First, plaintiffs contend that any order, judgment or proceeding in *Ramirez* affecting plaintiffs is void. Specifically, plaintiffs contend that they did not receive timely notice of *Ramirez* and that plaintiffs' attorney was not served with notice.

Notice of the *Ramirez* class action was sent to all class members, including plaintiffs, via regular mail on or before August 2, 1996. The Illinois Supreme Court has held that individually mailed notice of a class action and settlement is constitutionally proper. *Miner v. Gillette Co.*, 87 Ill. 2d 7, 428 N.E.2d 478 (1981). Plaintiffs were sent the

constitutionally required notice of the *Ramirez* class action and were given the opportunity to opt out. It should also be noted that plaintiffs were given a second opportunity to opt out of the *Ramirez* class and thereby exclude themselves from the *Ramirez* judgment when defendants' counsel offered to stipulate that plaintiffs could opt out of the *Ramirez* class. For reasons that are unclear, plaintiffs refused the stipulation.

Plaintiffs further contend that the *Ramirez* order and judgment are void because plaintiffs' attorney was not served with notice. Illinois Supreme Court Rule 11(a) (145 Ill. 2d R. 11(a)), cited by plaintiffs, is inapplicable because the notice at issue was in the *Ramirez* class action, an action pending in California, where plaintiffs were not yet represented by counsel.

Plaintiffs rely on *Supermarkets General Corp. v. Grinnell Corp.*, 490 F.2d 1183 (2d Cir. 1974), for the proposition that notice must be sent to attorneys for all class members if the defendant has knowledge of their individual actions. In that case, the court suggested that in the future it may be desirable to order such notice to attorneys. The court did not, however, hold that such notice was required by due process. Moreover, the majority of federal cases have agreed that supplemental notice to individual counsel is not required to satisfy due process. *In re VMS Securities Litigation*, No. 89C9448 (N.D. Ill. August 13, 1992); *In re Prudential Securities Inc. Ltd. Partnerships Litigation*, 164 F.R.D. 362 (S.D.N.Y. 1996), *aff'd*, 107 F.3d 3 (2d Cir. 1996) (holding that initiation of separate litigation does not confer upon class members a right to notice above and beyond that due other class members).

We hold that plaintiffs were given constitutionally proper notice of *Ramirez* and that any order or judgment in that case affecting them is not void.

Next, plaintiffs contend that filing their individual lawsuit notified Toyota of their desire to be excluded from the *Ramirez* class action. No Illinois case has addressed this issue. Plaintiffs rely on *McCubbrey v. Boise Cascade Home & Land Corp.*, 71 F.R.D. 62 (N.D. Cal. 1976), where the court held that institution of personal litigation constitutes an effective expression of a desire to be excluded from an impending class action.

However, the prevailing view is that pending litigation is not a substitute for compliance with judicially ordered exclusion procedures in a class action. See *In re VMS Securities Litigation*, No. 89C9448 (N.D. Ill. August 13, 1992); *In re Prudential Securities Inc. Ltd. Partnerships Litigation*, 164 F.R.D. 362 (S.D.N.Y. 1996), *aff'd*, 107 F.3d 4 (2d Cir. 1996); *Penson v. Terminal Transport Co.*, 634 F.2d 989 (5th

Cir. 1981); *Manji v. New York Life Insurance Co.*, 945 F. Supp. 919 (D.S.C. 1996); *Prince George Center, Inc. v. United States Gypsum Co.*, 704 A.2d 141 (Pa. Super. 1997).

Public policy concerns support requiring compliance with judicially ordered exclusion procedures. Class defendants are often willing to settle with a class representative for the very reason that they hope to gain relief from extensive, repetitive litigation by similarly situated plaintiffs. Judicially ordered exclusion procedures and opt-out deadlines ensure that class defendants can rely on the membership of a class becoming fixed by a certain date and that such members will be bound by the resulting outcome of the class action. See *Prince George Center, Inc.*, 704 A.2d at 145; *In re Painewebber Ltd. Partnerships Litigation*, 147 F.3d 132 (2d Cir. 1998).

We follow the majority view and find that pending individual litigation is not a substitute for compliance with judicially ordered exclusion procedures in a class action.

To summarize, we find that plaintiffs' federal Consumer Leasing Act claims, with the exception of the claim for tax overcharges, are barred by the doctrine of *res judicata*. Therefore, we affirm in part and reverse in part the circuit court's dismissal of plaintiffs' CLA claims.

Plaintiffs next contend that the circuit court erred in dismissing their claims under the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 1996)), for failure to state a cause of action. A cause of action should not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved under the pleadings that will entitle the plaintiff to recover. *Guice v. Sentinel Technologies, Inc.*, 294 Ill. App. 3d 97, 689 N.E.2d 355 (1997).

■ To state a cause of action under the Consumer Fraud Act a plaintiff must plead: (1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; and (3) that the deception occurred in the course of trade or commerce. *Cripe v. Leiter*, 184 Ill. 2d 185, 703 N.E.2d 100 (1998); *Siegel v. Levy Organization Development Co.*, 153 Ill. 2d 534, 607 N.E.2d 194 (1992). A plaintiff may allege that conduct is unfair under the Consumer Fraud Act without alleging that the conduct is deceptive. *Saunders v. Michigan Avenue National Bank*, 278 Ill. App. 3d 307, 662 N.E.2d 602 (1996). Whether a practice is unfair depends on a case-by-case analysis. *Saunders*, 278 Ill. App. 3d at 313. To be unfair, the defendant's conduct must (1) offend public policy; (2) be so oppressive that the consumer has little alternative but to submit; and (3) cause consumers substantial injury. *Saunders*, 278 Ill. App. 3d at 313; *Perez v. Citicorp*

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Mortgage, Ltd.*, 301 Ill. App. 3d 413, 703 N.E.2d 518 (1998). In a complaint under the Consumer Fraud Act, a plaintiff must allege specific facts supporting each element of his claim. *Mackinac v. Arcadia National Life Insurance Co.*, 271 Ill. App. 3d 138, 648 N.E.2d 237 (1995).

■ Plaintiffs allege that several of Toyota's practices violate the Consumer Fraud Act. These practices include: failure to allow early termination; failure to disclose the capitalized cost of the vehicles; failure to disclose GAP charges; failure to disclose certain auction, transportation, and reconditioning fees; and charging a double penalty.

We first note that plaintiffs have already recovered for the auction, transportation and reconditioning fees under the federal Consumer Leasing Act in the *Ramirez* action. Plaintiffs cannot now file a second cause of action seeking recovery for the same injury. See *Wiencek v. Woodfield Ford Sales, Inc.*, 232 Ill. App. 3d 471, 597 N.E.2d 744 (1992).

Plaintiffs have failed to allege sufficient facts to show that defendants' failure to allow early termination of the leases was an unfair or deceptive practice. The leases expressly stated that no early termination was permitted. It was in the leases and, therefore, known to plaintiffs from the inception of the leases. There was no deception.

Nor have plaintiffs alleged sufficient facts to show that defendants' conduct was unfair. There is a total absence of the type of oppressiveness and lack of meaningful choice necessary to establish unfairness. Plaintiffs knew that early termination was not permitted when they entered into the lease. Plaintiffs could have chosen to go elsewhere to lease a car. See *Saunders*, 278 Ill. App. 3d at 314 (defendant's overdraft policy was not unfair under the Consumer Fraud Act where plaintiff knew of the fee prior to opening her account and was free to select another bank); *Tudor v. Jewel Food Stores, Inc.*, 288 Ill. App. 3d 207, 681 N.E.2d 6 (1997) (Consumer Fraud Act count failed to allege sufficient facts to show defendant's practice was unfair where plaintiff failed to adequately plead that she had no alternative but to pay the incorrectly scanned prices). Defendants' failure to allow early termination does not rise to the level of unfairness necessary to support a claim under the Consumer Fraud Act.

Plaintiffs' claim that defendants unfairly charged a double penalty by assessing 10 cents per mile for every mile exceeding 15,000 miles annually and also requiring plaintiffs to pay for any excess wear and tear on the car fails for similar reasons. Plaintiffs have failed to allege sufficient facts to show that defendants' conduct was unfair. As discussed above, there was a total absence of the type of oppressiveness and lack of meaningful choice necessary to establish unfairness. Furthermore, plaintiffs have failed to allege sufficient facts to show

that defendants' conduct was deceptive as the leases expressly set out the excess mileage/wear and tear charges.

Finally, plaintiffs allege that defendants' failure to disclose the capitalized cost of the vehicle and the GAP charges was unfair and deceptive. Defendants respond that their compliance with the Truth In Lending Act (TILA) (15 U.S.C. § 1602 *et seq.* (1994)) and the Consumer Leasing Act is a complete defense to these Consumer Fraud Act claims.

Section 10b(1) of the Consumer Fraud Act provides that it does not apply to "[a]ctions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States." 815 ILCS 505/10b(1) (West 1996).

In *Lanier v. Associates Finance, Inc.*, 114 Ill. 2d 1, 499 N.E.2d 440 (1986), the supreme court addressed the issue of the relationship between the TILA and the Consumer Fraud Act. In that case, the plaintiff contended that defendant's use of the Rule of 78's to compute the interest on loans, absent an explanation to the borrower about the effects of the rule upon early repayment, was a violation of the Consumer Fraud Act. The court first found that the TILA did not require such an explanation but, rather, only required that the name of the method be given. The court then considered whether defendant's compliance with the TILA was a defense to plaintiff's Consumer Fraud Act claim. The court noted that the Consumer Fraud Act does not mandate any particular form or subject of disclosure but, rather, is a general prohibition of fraud and misrepresentation. The court held that the Consumer Fraud Act does not require more extensive disclosure than that required by the comprehensive provisions of the TILA. The court found that because TILA is a law administered by the Federal Reserve Board, under section 10b(1) of the Consumer Fraud Act, the defendant's compliance with the requirements of the TILA is a defense to liability under the Consumer Fraud Act. See also *Aurora Firefighter's Credit Union v. Harvey*, 163 Ill. App. 3d 915, 516 N.E.2d 1028 (1987) (absence of disclosure to guarantor of loan not violative of Consumer Fraud Act because it was within disclosure authorization established by the TILA); *First Midwest Bank, N.A. v. Sparks*, 289 Ill. App. 3d 252, 682 N.E.2d 373 (1997) (bank's alleged failure to disclose defendant's financial condition was authorized by the Illinois Banking Act (205 ILCS 5/48.1 (West 1994)) and was therefore within the scope of the section 10b(1) of the Consumer Fraud Act); *Weatherman v. Gary-Wheaton Bank of Fox Valley, N.A.*, 186 Ill. 2d 472, 713 N.E.2d 543 (1999) (defendant's compliance with the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 *et seq.* (1994))

renders defendant exempt from liability under the Consumer Fraud Act).

*Grimaldi v. Webb*, 282 Ill. App. 3d 174, 668 N.E.2d 39 (1996), *Bernhauser v. Glen Ellyn Dodge, Inc.*, 288 Ill. App. 3d 984, 683 N.E.2d 1194 (1997), and *Pawlikowski v. Toyota Motor Credit Corp.*, 309 Ill. App. 3d 550, 722 N.E.2d 767 (1999), relied upon by plaintiffs, are distinguishable. In those cases the courts found that the defendants' actions were not specifically authorized by the TILA. In *Grimaldi*, the TILA authorized defendant to disclose plaintiff's financing terms before she entered into the retail installment agreement, but did not specifically authorize binding plaintiff to a contract to buy a car that would be financed before disclosing the financing terms. In *Bernhauser* and *Pawlikowski*, the courts found that the defendant dealers did not comply with the disclosure requirements of the TILA.

This case is more analogous to *Lanier*. Here defendant's disclosure complied with the requirements of the TILA and CLA. At the time plaintiffs entered into their leases, the TILA and CLA did not require disclosure of the capitalized cost of a car or the GAP charges. Therefore, we find that defendant's compliance with the TILA and CLA is a defense to plaintiff's Consumer Fraud Act claims for failure to disclose the capitalized cost and the GAP charges and we affirm the dismissal of those claims.

We reject plaintiffs' contention that the circuit court erred in dismissing their claims under the Uniform Deceptive Trade Practices Act (the Uniform Act) (815 ILCS 510/1 *et seq.* (West 1996)).

Plaintiffs alleged that defendants violated section 2(12) of the Uniform Act and sought relief in the form of an injunction, attorney fees, an accounting, and monetary damages. The Uniform Act allows for injunctive relief and in certain cases attorney fees. However, an award of damages or an accounting is not an available remedy. *Smith v. Prime Cable*, 276 Ill. App. 3d 843, 658 N.E.2d 1325 (1995); *Empire Home Services, Inc. v. Carpet America, Inc.*, 274 Ill. App. 3d 666, 653 N.E.2d 852 (1995).

The Uniform Act was not intended to be a consumer protection statute but, rather, was intended to prohibit unfair competition. *Popp v. Cash Station, Inc.*, 244 Ill. App. 3d 87, 613 N.E.2d 1150 (1992); *Disc Jockey Referral Network, Ltd. v. Ameritech Publishing*, 230 Ill. App. 3d 908, 596 N.E.2d 4 (1992). While the primary focus of the Uniform Act is on actions between competitors, a cause of action can be stated by an individual consumer where that consumer can allege facts that indicate he is likely to be damaged by defendant's conduct in the future. *Popp*, 244 Ill. App. 3d at 98-99; *Greenberg v. United Airlines*, 206 Ill. App. 3d 40, 563 N.E.2d 1031 (1990); *Smith*, 276 Ill. App. 3d at

860. The problem in most consumer actions under the Uniform Act is the inability to allege facts indicating the likelihood of damage in the future. *Glazewski v. Coronet Insurance Co.*, 108 Ill. 2d 243, 483 N.E.2d 1263 (1985); *Brooks v. Midas-International Corp.*, 47 Ill. App. 3d 266, 361 N.E.2d 815 (1977); *Popp*, 244 Ill. App. 3d at 99; *Greenberg*, 206 Ill. App. 3d at 47.

■ Although they ask the court to enjoin defendants from using any default remedies, their own leases have already expired. It is undisputed that neither plaintiff terminated her lease before the natural expiration date. Whatever harm plaintiffs may suffer from the leases has already occurred. There is no indication in the record that plaintiffs have entered into new leases with defendants. Plaintiffs are now aware of the potential problems associated with defendants' leases and, armed with that knowledge, can avoid them. See *Brooks*, 47 Ill. App. 3d at 275-76; *Glazewski*, 108 Ill. 2d at 253. We find that defendants' conduct is not likely to harm plaintiffs in the future.

If plaintiffs cannot, in an individual capacity, bring a cause of action under the Uniform Act because of the lack of future harm, they cannot do so as representatives of a class. *Popp*, 244 Ill. App. 3d at 99; *Brooks*, 47 Ill. App. 3d at 276. We find that plaintiffs have failed to state a cause of action under the Uniform Act, either individually or as representatives of a class.

■ Plaintiffs next contend that the trial court erred in dismissing their breach of contract claim. We agree.

Plaintiff Kemp's lease clearly states that she would pay $168 in estimated taxes and fees. The monthly payment of $319.26 for 42 months is supposed to be an accurate calculation of the contract terms. The reality is that 42 monthly payments of $319.26 amounted to $1,242 in taxes, not $168. At the very least, these contract terms create an ambiguity that must be resolved in favor of Kemp for purposes of determining whether a claim has been stated. A complaint should be dismissed only where it clearly appears that no set of facts could be proved under the pleadings that would entitle the plaintiff to relief. *Lagen v. Balcor Co.*, 274 Ill. App. 3d 11, 653 N.E.2d 968 (1995). This ambiguity precludes dismissal because it appears that a set of facts could be proven that would entitle the plaintiff to relief. See *Ahsan v. Eagle, Inc.*, 287 Ill. App. 3d 788, 678 N.E.2d 1238 (1997). We find that the circuit court erred in dismissing Kemp's breach of contract claim.

■ Finally, plaintiffs contend that the circuit court erred in dismissing plaintiffs' complaint against defendants Point One and River Oaks because those defendants never asked for dismissal with prejudice. Plaintiffs' argument is without merit. The second amended complaint addresses all three defendants in the body of each count. All three

defendants are treated essentially as one entity. Therefore, if the complaint fails to state a cause of action against Toyota, it also fails to state a cause of action against Point One and River Oaks.

Accordingly, for the reasons set forth above, the judgment of the circuit court of Cook County is affirmed in part, reversed in part, and remanded for further proceedings.

Affirmed in part and reversed in part; cause remanded.

HOFFMAN, P.J., and SOUTH, J., concur.