Mary J. Welsh, Plaintiff-Appellant, v. Mrs. Phillip Centa and Wilbert Manzke, Defendants-Appellees.

Gen. No. 50,655.

First District, Third Division.

September 29, 1966.

Unger & Unger and Julian A. Levey, of Chicago, for appellant.

Richard C. Bleloch and Robert A. Wiacek, of Chicago, for appellee, Mrs. Phillip Centa.

Jay A. Baier and Pretzel, Stouffer, Nolan & Rooney, of Chicago (Joseph B. Lederleitner, of counsel), for appellee, Wilbert Manzke.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

■ This is an appeal from a summary judgment entered in favor of the defendants in a personal injury suit growing out of a rear-end collision on June 3, 1962, when the automobile the plaintiff was driving was hit in the rear by a vehicle driven by defendant Mrs. Phillip Centa. A third vehicle driven by defendant Wilbert Manzke had driven into the rear of the Centa car and forced it against plaintiff's car. Plaintiff negotiated a settlement and on June 20, 1962, seventeen days after the accident, she and her husband Richard executed a release of defendant Manzke. Plaintiff received the sum of $175, and in addition thereto the sum of $25 was paid for the release of any injury to her child who was in the car at the time of the accident, but with respect to whom no claim was made. That the release, if effective at all, discharges both defendants is not questioned. The principal issue in this case is whether the trial judge, sitting as a chancellor, properly set aside the release on motion for summary judgment.

Plaintiff in her complaint made no reference to a release. The answer of defendant Manzke denied the charges of negligence and pleaded the affirmative defense of release. Mrs. Centa, by her answer, likewise denied the allegations of negligence and alleged that her vehicle while stationary was forced into contact with plaintiff's car by the impact of defendant Manzke's car. She also pleaded the release as an affirmative defense.

In reply to the answers of the defendants, plaintiff admitted the execution of the release and admitted endorsing the draft in the sum of $200 paid to her for herself and her child. She alleged in her amended reply that the release did not constitute a release in law "inasmuch as the [sic] represent a mistake of fact, as between the parties." She added a paragraph, arguendo, that none of the parties to the cause intended to release a

307

claim for the serious, substantial and permanent injuries of which the plaintiff now complains, "but rather [that it] indicated only a settlement of a property damage claim, a minor, temporary and inconsequential injury claim and the inconvenience attendant thereto."

Plaintiff then filed an amended complaint and finally a second amended complaint in two counts on January 8, 1965. In Count I she alleged that she was unaware of the nature and extent of her injuries and that defendant's agent who had procured her release was also unaware thereof; that both were mutually mistaken in believing that plaintiff's injuries were slight and inconsequential; and that subsequently it developed that the injuries sustained were of a serious and permanent nature and that had both parties been aware of the true nature of her condition, the release would not have been executed. Plaintiff tendered back the $175 paid to her and prayed that the release be declared null and void. The second count charged negligence against both defendants and that plaintiff had suffered internal and external disorders. Defendant Centa denied the averments of Count I with respect to the release, and as to Count II averred that her car had been pushed by defendant Manzke's car into contact with plaintiff's automobile. Manzke likewise denied the averments with respect to the release and denied the charge of negligence on his part.

Motions for summary judgment were made by Centa and Manzke. They were supported by affidavits and by a discovery deposition of plaintiff. In her affidavit Mrs. Centa not only relied on the release, but restated her defense with respect to her car being pushed by defendant Manzke's car into plaintiff's car. In her deposition, plaintiff testified that the accident occurred in Tinley Park, Illinois, on a Sunday morning; that she was stopped about midblock in a line of heavy Sunday morning church traffic and that she observed the Centa car

308

in her rear view mirror while the latter pulled up behind her and stopped. Her verbatim testimony on this vital point is as follows:

"Q. And did you see a car come up behind you and stop behind you?
"A. Yes.
". . .
"Q. And did you see that in your rear view mirror?
"A. Yes, I knew there was a car in back of me.
"Q. Did you see it come up and stop behind you?
"A. I am pretty sure she was stopped."

When questioned with regard to her remarks immediately following the collision, plaintiff replied, "Oh, I do remember saying that evidently that man Manzke, or whoever it was, must have hit both of us." Plaintiff's slight qualification of her statement does not reflect upon the verity of her original testimony.

After the accident plaintiff suffered discomfort to her neck, and a day or so following the accident went to her family doctor for a checkup. Between the date of the accident and the signing of the release, plaintiff visited her doctor several times, complaining of pain in the neck and chest. He took X-rays of her neck and after several visits assured her that aside from the discomfort there was nothing wrong. Plaintiff testified that an insurance adjuster representing defendant Manzke's insurance carrier called on her to discuss settlement. She told him she did not wish to settle *until she was satisfied that she was all right.* After her series of visits to her doctor, she called the adjuster and said she was ready to discuss settlement. He came to her home again, where the release was executed on June 20, 1962. Five months later, in November, 1962, after experiencing severe headache pain, plaintiff again went to see her doctor and her injury was then diagnosed as a whiplash, and she was hospitalized from December 4 until about December 22,

1962. She was put in traction and following her release from the hospital she was fitted with a cervical collar which she wore until April, 1963.

In her deposition plaintiff said that two years prior to the accident here in question she had suffered a similar whiplash injury in another traffic accident and that she had settled her damage claim arising from that accident and had not brought suit.

 The purpose of a motion for summary judgment is to determine whether there is a genuine issue as to any material fact. Allen v. Meyer, 14 Ill2d 284, 152 NE2d 576; Illinois Power Co. v. City of Jacksonville, 18 Ill2d 618, 165 NE2d 300; Gliwa v. Washington Polish Loan & Bldg. Ass'n, 310 Ill App 465, 34 NE2d 736. It is apparent from the deposition of plaintiff herself that defendant Centa was in no way negligent. With respect to defendant Centa, therefore, the motion for summary judgment was properly sustained on the basis of admitted facts without regard to the validity of the release.

As to defendant Manzke, however, the sole basis upon which the summary judgment in his favor can be sustained depends upon the court's ruling that the release was valid. This in turn depends largely on plaintiff's deposition. Plaintiff in her abstract, consisting of 78 pages, did not undertake to give us an abstract of that testimony, but instead quoted many pages literally. Defendant Manzke filed an additional abstract of 55 pages, also quoting plaintiff's deposition literally. Defendant Centa, evidently dissatisfied with portions of the deposition given by plaintiff, filed a supplemental abstract of some ten pages, quoting portions of the testimony.

Plaintiff argues that when it became apparent to the court that the motion for summary judgment could only be decided by the perusal of a long record with conflicting opinions as to the interpretation of the testimony, it should have decided that an issue of fact had been joined and the motion for summary judgment should have been

denied. The record was indeed long. It was also cumbersome and repetitious. As we have said, it was presented to this court in three parts, totaling 143 pages, although the issue was relatively simple. The fact that there were conflicting opinions with respect to the interpretation of the testimony does not necessarily establish the existence of a genuine issue of fact. If the difference of opinion, as in the instant case, relates to the legal consequence of facts to which a witness has unequivocally testified, then the question is essentially one of law. The plaintiff herself testified to the circumstances surrounding the execution of the release.

■ If a party in a judicial proceeding testifies deliberately, clearly and unequivocally to a concrete fact within his peculiar knowledge, the adverse party is entitled to hold him to it as an informal judicial admission. Tennes v. Tennes, 320 Ill App 19, 50 NE2d 132; Huber Black & White Cab Co., 18 Ill App2d 186, 151 NE2d 641.

■■ Motions for summary judgment may be supported by deposition. Allen v. Meyer, 14 Ill2d 284, 152 NE2d 576. Affidavits filed in support of a motion for summary judgment are a substitute for testimony taken in open court and can contain as much pertinent information as the affiant could competently testify to if he were sworn as a witness. James F. Goodwin, Inc. v. George W. Bowers Co., 24 Ill App2d 158, 164 NE2d 278.

The question as it now stands in the case before us does not involve a dispute as to events which occurred. What was said and done during the period of negotiation and at the time of the execution of the release is fully set forth in plaintiff's deposition, and the question presented is whether those events constitute a mutual mistake of fact and a basis for setting aside the release.

■■ Illinois follows the majority of jurisdictions in allowing a court to set aside a release executed by a tort victim when the facts indicate that the parties were mutually mistaken as to the extent of the releasor's in-

juries. Clancy v. Pacenti, 15 Ill App2d 171, 145 NE2d 802; Ruggles v. Selby, 25 Ill App2d 1, 165 NE2d 733; Smith v. Broscheid, 46 Ill App2d 117, 196 NE2d 380, 71 ALR2d 77. The mistake must be mutual, and a unilateral or self-induced mistake of fact will be insufficient to void a release. Child v. Lincoln Enterprises, Inc., 51 Ill App2d 76, 200 NE2d 751; Thomas v. Hollowell, 20 Ill App2d 288, 155 NE2d 827.

■ ■ The rescission or avoidance of a release is a form of equitable relief. As the court said in Ruggles v. Selby, supra, at 12:

"The trend to set aside releases of personal-injury claims in those situations where the facts, when finally known, present an unconscionable result, is due in large measure to the fact that these are matters for the chancellor in equity who is vested with that degree of discretion and flexibility necessary to the doing of justice under the circumstances of each individual case."

Count I of plaintiff's complaint is based on that equitable power.

■ ■ The burden of proving that a release should be set aside rests with the party urging the invalidity of the document, and the evidence must be clear and convincing. Hudson v. Thies, 35 Ill App2d 189, 182 NE2d 760; Child v. Lincoln Enterprises, Inc., 51 Ill App2d 76, 200 NE2d 751. In the Child case, supra, the court said, at 82:

"The law favors compromise, and accordingly, the burden of proof is placed on the one contending that a release was secured as a result of mistake or misrepresentation or fraud and such mistake or misrepresentation or fraud must be shown by clear and convincing evidence."

312

■ Plaintiff admitted that she had had previous experience with a whiplash injury. She was familiar with the characteristics of such injuries and testified that she would not negotiate with the defendants until she had seen her doctor and received his advice with respect to the injury. In the meantime the defendants exerted no pressure, but merely stood by. Plaintiff consulted her doctor several times and made an appointment to settle her claim only after she had been assured that she had not suffered serious injury.

When the circumstances surrounding a settlement, such as a great discrepancy between the amount of the settlement and the amount of ensuing damages, the exercise of pressure to make the settlement, the superior position of an affluent defendant over a needy plaintiff, or the occurrence of an unforeseen and extraordinary complication in the known injuries, clearly indicate that settlement was executed under a mutual mistake of fact, the court may act in order to prevent an unconscionable hardship to the injured party. This remedy, however, must exit in harmony with our policy of encouraging settlement and ending litigation. We said in Clancy v. Pacenti, supra, at 177:

> "[I]t is important to preserve a field of action within which parties may compromise their differences with substantial assurance that the matter will not arise again."

If we do not proceed with caution in this field and the validity of releases be seriously impaired, the result could be an enormous addition to a case load even now overwhelming.

We hold that where an injured party, conscious of the possibility of future consequences from the injury, makes her own investigation as to the nature of her injuries and the prospect of future complications, and, re-

lying on the diagnosis and prognosis of her own doctor, compromises her claim and executes a release without reservation, she is bound thereby. The trial court properly sustained the motion for summary judgment.

Judgment affirmed.

SULLIVAN, P. J. and DEMPSEY, J., concur.