ELLWYN VAESSEN *et al.*, Plaintiffs-Appellants, *v.* LARRY WEBER *et al.*, Defendants-Appellees.

Second District    No. 80-453

Opinion filed February 26, 1981.

John A. Leemon, of Mt. Carroll, for appellants.

Alfred W. Cowan, of Brassfield, Cowan & Howard, Robert K. Clark, and Barrick, Jackson, Switzer, Long & Balsley, all of Rockford, and Bull, Ludens, Potter & Burch, of Morrison, for appellees.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:

The plaintiffs appeal from the order of the circuit court of Ogle County granting summary judgment in favor of the defendant, Larry Weber, and dismissing the complaint brought against the other defendants in this case.

The plaintiff, Ellwyn Vaessen, was injured on March 5, 1977, while at the grain storage facilities owned and operated by the defendant, Larry Weber, in Ogle County. Corn had clogged a pipe making up part of the grain storage facilities on Weber's premises and Ellwyn Vaessen agreed to climb up the pipe and try to unclog it for the sum of $25. While he was climbing the pipe and before he reached the clogged portion, a part of the pipe or the pipe supports gave way, causing the plaintiff to fall some 55 feet to the ground, injuring him. He was hospitalized in intensive care for three days and remained in the hospital for several more days before being released. About a month later, he returned to the hospital because of severe pain in both shoulders. It was discovered at that time that he also had a broken leg as well as torn ligaments in his shoulder. While the plaintiff was in the hospital the second time, he told his wife to call Richard Gibbs, the insurance company adjuster. He informed Gibbs that he wanted all of his hospital bills taken care of. Subsequently, he went to Gibbs' house to discuss possible settlement. Following that, on May 6, 1977, the plaintiff met with Gibbs at his home at which time he told Gibbs that his medical bills amounted to $5800. Gibbs offered to pay $6000 in settlement, which the plaintiff accepted, and he and his wife, Daunene Vaessen, executed a settlement release. Previous to executing the settlement release, the plaintiff consulted an attorney but the attorney in-

formed him that he could not represent the plaintiff because of a conflict of interest inasmuch as he already represented the Country Companies, who insured one or more of the possible defendants. The plaintiff did not consult another attorney.

At the time the release was signed the plaintiff was aware that he might have to have therapy for his shoulders as he could not raise his arms above his head. He also had been informed that he had a broken leg and several cracked ribs. Gibbs testified that at the time he met with the plaintiff he showed him the doctor's report which, in answer to the stated question: "What permanency may result?" stated: "None anticipated." The plaintiff testified that Gibbs did not show him the doctor's report but merely said that he had a letter from the doctor saying that the plaintiff was going to be all right.

Shortly after signing the release the plaintiff returned to the hospital for further therapy. Some months later, in December of 1977 he again went into the hospital and had an operation to repair a torn rotary cuff in the left shoulder joint. Since May 6, 1977, the date of settlement, the plaintiff's medical bills have totaled over $14,000 and further bills are anticipated.

On February 27, 1979, the plaintiff filed a 10-count complaint naming various defendants under several theories. All defendants had been released in a release executed by the plaintiff on May 6, 1977. The defendants filed motions to dismiss the complaint based on the release and the defendant, Larry Weber, filed a motion for summary judgment. The trial court after a hearing granted the defendants' motion to dismiss the complaint and Weber's motion for summary judgment, holding that the release was valid, not being either taken under a mutual mistake of fact or unconscionable in amount.

The plaintiff contends in this appeal that the trial court erred in granting the motion to dismiss and for summary judgment because the release was given under a mutual mistake of fact as to the extent of the injury and was unconscionable considering the plaintiff's ultimate medical expenses.

The law as to setting aside a release on the basis of mutual mistake creating an unconscionable result, is well summed up in *Welsh v. Centa* (1966), 75 Ill. App. 2d 305, 313, where the court said:

> "When the circumstances surrounding a settlement, such as a great discrepancy between the amount of the settlement and the amount of ensuing damages, the exercise of pressure to make the settlement, the superior position of an affluent defendant over a needy plaintiff, or the occurrence of an unforeseen and extraordinary complication in the known injuries, clearly indicate that settlement was executed under a mutual mistake of fact, the court

may act in order to prevent an unconscionable hardship to the injured party. This remedy, however, must exit in harmony with our policy of encouraging settlement and ending litigation. We said in Clancy v. Pacenti, supra, at 177:

> '[I]t is important to preserve a field of action within which parties may compromise their differences with substantial assurance that the matter will not arise again.'

> If we do not proceed with caution in this field and the validity of releases be seriously impaired, the result could be an enormous addition to a case load even now overwhelming."

In the case before us we do not believe the circumstances indicate a mutual mistake was made. The testimony of Gibbs, the adjuster, clearly indicates he did not offer the $6000 on the basis that this was all that was required to make the plaintiff whole, it was, rather, the amount he could obtain from the several defendants' insurance carriers to dispose of a case of questionable liability. While the plaintiff testified that Gibbs told him the doctor had said he (plaintiff) was going to be all right, Gibbs testified that he merely showed the doctor's report to the plaintiff, and he did not remember telling him the doctor said he was going to be all right. The testimony does not indicate a meeting of the minds such as would amount to a mutual mistake. In any event, the plaintiff was obviously aware of his actual condition—he knew he had to have further treatments since he could not move his left arm over his head nor raise his right shoulder. He was also aware at that time that he had suffered a broken leg and seven broken ribs. This is not, therefore, like the case of *Newborn v. Hood* (1980), 86 Ill. App. 3d 784, cited by the plaintiff. In that case, the plaintiff developed an entirely unexpected injury not associated with her original symptoms and unknown and unsuspected at the time of settlement. Originally the plaintiff therein had been thought to have only a bruised thigh, superficial abrasions of the right elbow, a blood clot on the back of the skull and muscular skeletal injuries to the shoulder and neck. However, within six months after the settlement, the plaintiff was discovered to be suffering from congestive heart failure, which in the opinion of the treating doctor, was most likely due to the automobile accident in question. She had received only $1200 in the settlement and this sum did not compensate for the development of congestive heart failure as the result of the accident. There were clearly grounds for the contention that the release was given under a mutual mistake of fact under those circumstances. The development of a heart condition was clearly not contemplated in the settlement. It was not a question of a known condition which got worse or did not heal as quickly as expected as in the case before us but of the development of a condition resulting from the original trauma which was unforeseen and unexpected by either of the

parties. That is not the case which is now before us. The plaintiff herein knew his condition and no new or unexpected condition arose. In *Newborn*, on the other hand, the settlement was made in ignorance of a critical factor which surfaced after the release was given. We do not consider that case apposite to the case before us.

The case of *DeMarie v. Baltimore & Ohio Chicago Terminal R.R. Co.* (1979), 79 Ill. App. 3d 50, presents a situation more similar to the facts before us. In that case the plaintiff was injured when struck by a switch engine while he was working on the premises of the defendant railroad. After the accident the plaintiff complained of back pain. It was the doctor's opinion that the plaintiff merely had a sprained back, and he did not inform the plaintiff of the possibility of a slipped disc. After several weeks the plaintiff was referred to another doctor who advised the plaintiff to return to work. He did so but also consulted a therapist who administered massage and vibration treatments. The claim adjuster called frequently to inquire whether the plaintiff was ready to settle. Some three months after the accident the plaintiff was still experiencing pain and had begun to drag his leg when walking. However, when he was again contacted by the adjuster he agreed after some negotiation to accept $7500 in settlement of his injury. After receiving the settlement of $7500 the plaintiff continued to have pain and during the following year had two operations to remove discs in his lower back. The cost of those operations and consequent loss of earnings amounted to some $17,000. The plaintiff sued the railroad and the railroad pleaded the release, but in a jury trial the plaintiff was awarded $125,000. Upon appeal, the appellate court reversed, holding that the defendant's motion for a directed verdict should have been granted under the circumstances of the case. In the course of its opinion the court stated:

> "At the time the release was executed, he was still suffering pain and receiving medical treatment. Though informed that he had merely sprained his back, plaintiff was aware that his back was crooked and that he dragged his leg when he walked. Yet, in spite of these problems he contacted defendant's claim agent and indicated that he wished to discuss a settlement. Under these facts, we cannot conclude that the extent of the plaintiff's injuries was an 'unexpected consequence.'" 79 Ill. App. 3d 50, 54-55.

This is similar to the circumstances we consider here. The plaintiff twice contacted the adjuster to discuss settlement during a period when he was suffering considerable pain and loss of full mobility of his arm and shoulder. While he expected he would have no permanent result from his injury, he was anxious to settle rather than to await developments. The adjuster expressed some doubt as to liability and explained that any settlement would have to consist of several small contributions from the insurers of the various possible defendants. In the end the plaintiff got

what he asked for—payment of his medical and hospital bills incurred to the date of settlement—about $6000. It was not a good settlement for the plaintiff because it did not fully consider either the extent of liability of the possible defendants nor the possibility of a permanent impairment of the plaintiff's arm and shoulder but the plaintiff got what he was negotiating for at the time the release was given and we think it would be poor policy to go back now and overthrow the settlement. As was said in *Clancy v. Pacenti* (1957), 15 Ill. App. 2d 171, 177:

> "* * * [I]t is important to preserve a field of free action within which parties may compromise their differences with substantial assurance that the matter will not arise again."

■■ We do not consider the settlement in this case to have been either made under a mutual mistake of fact or to have been unconscionable under the circumstances and background of the case. In *Willis v. Reum* (1978), 64 Ill. App. 3d 146, 148, the court said:

> "While the law seeks to avoid unconscionable results, it is also the policy of the law to favor the compromise of claims. * * * Sanctioning as it does the compromise of claims and the termination of disputes, the law cannot permit the setting aside of the release in this case when such release shows clear contemplation of covering future claims or rights of action of plaintiff and its consideration was not grossly inadequate or in a nominal sum."

■■ Daunene Vaessen, Ellwyn's wife, is a plaintiff in this suit, based on loss of consortium. She also signed the release and now contends she received no consideration for doing so, therefore the release is not valid as to her. The record does not disclose whether Daunene endorsed the draft, neither side having submitted the paid draft in evidence. However, in any event, we think the consideration of $6,000 paid to her husband for medical expenses was sufficient consideration for the wife's release of any and all claims at the time it was given in May 1977. The fact that she sued for loss of consortium in March of 1979, about 20 months later, does not invalidate her deliberate act at the time the release was executed and the draft delivered.

We believe the trial court was correct in finding as a matter of law that there was not a mutual mistake of fact as to the plaintiff's injuries at the time the release was given. Thus, there was no material issue to be tried and summary judgment was in order.

For the foregoing reasons, the judgment of the circuit court of Ogle County is affirmed.

Judgment affirmed.

SEIDENFELD, P. J., and REINHARD, J., concur.