# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Currie v. Wisconsin Central, Ltd.*, 2011 IL App (1st) 103095

---

| | |
|---|---|
| Appellate Court Caption | KOREY CURRIE, Plaintiff-Appellant, v. WISCONSIN CENTRAL, LTD., Defendant-Appellee. |
| District & No. | First District, Sixth Division<br>Docket No. 1-10-3095 |
| Filed | September 30, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiff's action alleging racial discrimination based on the conditions of his employment by defendant railroad was properly dismissed on *res judicata* grounds where plaintiff's claims were precluded by the consent decree entered in a federal class action against several related railroads, including the railroad named herein, since plaintiff's claims were included in the class action complaint and the "Release" section of the consent decree and plaintiff failed to opt out of the class action. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-L-11505; the Hon. Bill Taylor, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | John C. Kreamer and Susan J. Best, both of Best, Vanderlaan & Harrington, of Chicago, for appellant. |
| | |
| | Noah G. Lipschultz, of Littler Mendelson, P.C., of Minneapolis, Minnesota, and Shanthi V. Gaur, of Littler Mendelson, P.C., of Chicago, for appellee. |
| | |
| Panel | PRESIDING JUSTICE R. GORDON delivered the judgment of the court, with opinion. |
| | Justice Cahill concurred in the judgment and opinion. |
| | Justice Garcia specially concurred, with opinion. |

**OPINION**

¶ 1    Plaintiff, Korey Currie, is appealing the decision of the circuit court which granted defendant's motion to dismiss plaintiff's complaint based on *res judicata*. The trial court found that the claims were precluded by the federal class action decree in Barnes v. Canadian National Railroad, No. 04-1249, Final Approval Order (N.D. Ill. Jan. 7, 2010) (*Barnes* class action).

¶ 2    On appeal, plaintiff contends, first, that his claims were unique from the discrimination claims in the *Barnes* class action. Second, plaintiff argues that, because the evidence of discrimination in his lawsuit would not have been sufficient proof for the *Barnes* class action, he seeks a remedy which was not included in the class action. Third, plaintiff argues that he did not receive adequate notice of the class action; therefore, he could not have opted out of the class. Finally, plaintiff contends that, by applying the doctrine of *res judicata*, the circuit court created an unjust and inequitable result. For the following reasons, we affirm.

¶ 3                              I. BACKGROUND

¶ 4                         A. The *Barnes* Class Action

¶ 5    A class action was filed on February 18, 2004, against Canadian National Railway and a number of its "indirect U.S. operating subsidiaries (including Wisconsin Central, Ltd. (hereinafter, CN defendants) by named plaintiffs, Melvin Barnes, Tracy Steele, and Jeremy Williams. The lead plaintiff was Barnes. The plaintiffs' complaint proposed a class consisting of "current, former, and future African-American employees of CN Defendants who, from approximately February 18, 2000[,] to the present, have been subjected to one or more aspects of the racial discrimination described in [the] Complaint."

¶ 6    The complaint in the *Barnes* class action alleged "race discrimination with respect to a number of different employment-related practices and policies, as well as a racially hostile

-2-

working environment and retaliation." The third amended complaint in the *Barnes* action contained three counts. The first two counts were class counts and the third count contained an individual claim by Barnes for retaliation. Barnes alleged that he had been fired in retaliation for bringing this class action. This third count stated that it was brought solely by Barnes "in his individual capacity."

¶ 7 On October 21, 2009, the class filed a motion for preliminary approval of a consent decree, which established a settlement, and advocated for approval of the class. The preliminary consent decree was approved on October 26, 2009.

¶ 8 The consent decree included a section devoted to the means of notifying the absent class members of their rights in relation to the class. Specifically, each individual who fell into the class of "[a]ll African-American employees of the Railroad from February 18, 2000[,] to the date of Preliminary Approval of the Consent Decree" were to be mailed a form which included information on how to "seek exclusion from the class" and "the binding effect of the class judgment." The proposed method of delivery for the notices was via first-class mail and was handled by the claims administrator. If a class member wished to opt out of the settlement, that intention was to be "set forth in writing, mailed via First Class Mail *** on or before December 9, 2009," and was required to "be personally signed by the class member." The date for returning the opt-out form was later extended to January 22, 2010. On January 7, 2010, the federal district court issued its "Final Approval Order" accepting the consent decree.

¶ 9                                    B. Plaintiff's Lawsuit

¶ 10 Plaintiff is an African-American who worked as a trackman for defendant, Wisconsin Central, for six weeks during June and July of 2008. The plaintiff's allegations of discrimination arise from his employment with the defendant.

¶ 11                                    1. Complaint

¶ 12 Plaintiff's complaint alleges that he worked as a trackman for defendant for six weeks during June and July of 2008. During this period, plaintiff alleges that he experienced discrimination as an African-American. Specifically he alleges that he was forced to do work that non-African-American employees were not asked to do and that the work environment was hostile. He alleges that other employees hung nooses on machinery and made inappropriate racial comments and that he reported the conduct to his superiors and nothing was done to remedy the situation. After repeatedly reporting the discriminatory conduct, plaintiff was discharged in July 2008. Plaintiff's complaint states that he was discharged in retaliation for filing complaints of discriminatory conduct with his superiors. Plaintiff's complaint states that, following his discharge, plaintiff filed a charge of discrimination with the Illinois Department of Human Rights (IDHR). His IDHR complaint was investigated for a year; and on September 10, 2009, the investigation was closed. Plaintiff alleges that IDHR determined not to file charges. Plaintiff then appealed that decision to the circuit court of Cook County in September 2009.

¶ 13                                    2. Motion to Dismiss

¶ 14        Defendant filed a motion to dismiss under section 2-619(a) of the Code of Civil Procedure claiming that plaintiff's claims are "barred by *res judicata*" and "specifically released by virtue of his failure to opt out" of Barnes v. Illinois Central Railroad, No. 04-1249, Final Approval Order (N.D. Ill. Jan. 7, 2009). See 735 ILCS 5/2-619(a) (West 2010). *Barnes* was a class action lawsuit filed in the federal district court for the Northern District of Illinois. Plaintiff did not opt out of the class. However, plaintiff claims he did not receive adequate notice to opt out by the indicated deadline.

¶ 15        In the case at bar, the trial court held an evidentiary hearing on September 16, 2010, to determine whether plaintiff was adequately notified of the class action. Steven Platt, a claims administrator, testified concerning the system used to notify class members, the steps taken when a notification was returned, and the entire process of notification to potential class members. Platt stated that the administrator can "track who was mailed what and when." Platt testified that the records indicated that notice was mailed to plaintiff on October 28, 2009.

¶ 16        Plaintiff testified that he "received [the notice] in December, approximately *** 3 days before Christmas," and that the notice was not received in time for him to opt out of the class. Plaintiff also testified that when he read the notice he did not believe it was relevant for him since "the common nucleus of fact in *Barnes* does not include those supporting [plaintiff's] claims of wrongful termination and retaliation on the basis of race" and that the relief the class was requesting was different from what he was requesting in his lawsuit.

¶ 17        In his complaint, plaintiff requested the following relief:

> "damages *** including but not necessarily limited to reinstatement, back pay, front pay, wage differential, lost benefits, out of pocket pecuniary losses, reasonable attorney's fees, severe emotional distress, pain and suffering, *** compensatory damages, punitive damages, *** and such other and further relief as this court may deem appropriate."

¶ 18        The *Barnes* class action requested:

> "(1) a declaratory judgment that s [*sic*] have engaged in systematic racial discrimination ***; (2) a permanent injunction against such continuing systematic discrimination; (3) a restructuring of the CN Defendants' selection and training procedures ***; (4) a restructuring of CN Defendants' workforce ***; (5) elimination of the hostile working environment; (6) the implementation of a non-discriminatory posting and bidding procedure; and (7) damages, backpay and other equitable remedies necessary to make the named Plaintiffs and putative class members whole from CN Defendants' past discrimination."

¶ 19        At the end of the evidentiary hearing on September 16, 2010, the trial court found that plaintiff did have adequate notice and granted defendant's motion to dismiss under section 2-619, based on *res judicata*.

¶ 20        Plaintiff then filed this timely appeal.

¶ 21                                    II. ANALYSIS

¶ 22    On appeal, plaintiff contends, first, that his claims were unique from the discrimination claims in the *Barnes* class action. Second, plaintiff argues that, because the evidence of discrimination in his lawsuit would not have been sufficient proof for the *Barnes* class action, he seeks a remedy which was not included in the class action. Third, plaintiff argues that he did not receive adequate notice of the class action; therefore, he could not have opted out of the class. Finally, plaintiff contends that, by applying the doctrine of *res judicata*, the circuit court created an unjust and inequitable result. For the following reasons, we affirm.

¶ 23                              A. Standard of Review

¶ 24    Defendant filed a section 2-619 motion to dismiss claiming plaintiff's cause of action was barred by a prior judgment. 735 ILCS 5/2-619(a)(4) (West 2008). Because a motion to dismiss under section 2-619 accepts as true the facts alleged in the complaint and asks a question of law, the standard of review is *de novo. Sheffler v. Commonwealth Edison Co.*, 2011 IL 110166, ¶ 23; see also *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 579 (2006). *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 25    "When reviewing 'a motion to dismiss under section 2-619, a court must accept as true all well-pleaded facts in plaintiffs' complaint and all inferences that can reasonably be drawn in plaintiffs' favor.' " *American Service Insurance Co. v. City of Chicago*, 404 Ill. App. 3d 769, 776 (2010) (citing *Morr-Fitz, Inc. v. Blagojevich*, 231 Ill. 2d 474, 488 (2008)). The trial court may consider pleadings, depositions, and affidavits when ruling on a section 2-619 motion to dismiss. *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 262 (2004). However, if a genuine disputed question of fact is present, "the court may either: (1) deny the motion without prejudice to the right to raise the subject matter of the motion by answer; or (2) hear and determine the merits of the dispute based upon the pleadings, affidavits, counteraffidavits, and other evidence offered by the parties." *Kirby v. Jarrett*, 190 Ill. App. 3d 8, 13 (1989) (citing *Etten v. Lane*, 138 Ill. App. 3d 439, 443 (1985)). The trial court below took the second approach with respect to the question of the adequacy of the notice. "When the second approach is taken, the reviewing court must review not only the law but also the facts, and may reverse the trial court order if it is incorrect in [applying the] law or against the manifest weight of the evidence." *Kirby*, 190 Ill. App. 3d at 13. "The issue of whether plaintiff was provided proper notice is a question of law. As a result, the standard of review is *de novo*." *Hwang v. Department of Public Aid*, 333 Ill. App. 3d 698, 703 (2002) (citing *Hormel Foods Corp. v. Zehnder*, 316 Ill. App. 3d 1200, 1204 (2000)).

¶ 26                         B. Requirements for *Res Judicata*

¶ 27    Under section 2-619, "[d]efendant may, within the time for pleading, file a motion for dismissal of the action or for other appropriate relief upon any of the following grounds," including "[t]hat the cause of action is barred by a prior judgment," in other words, for *res judicata*. 735 ILCS 5/2-619(a)(4) (West 2008).

¶ 28    The Illinois Supreme Court has held that "[f]or the doctrine of *res judicata* to apply, three

requirements must be met: (1) there was a final judgment on the merits rendered by a court of competent jurisdiction; (2) there was an identity of causes of action; and (3) there was an identity of parties or their privies." *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 335 (1996). In addition, *res judicata* "extends not only to what was actually decided in the original action, but also to matters which could have been decided in that suit." *Rein*, 172 Ill. 2d at 334-35. The party seeking to apply *res judicata* has the burden of proof. Therefore, the defendant must "show with clarity and certainty the parties, the precise issues, and the judgment of the former action." *Best Coin-Op, Inc. v. Paul F. Ilg Supply Co.*, 189 Ill. App. 3d 638, 650 (1989).

¶ 29        As stated above, the first requirement for *res judicata* is a final judgment on the merits. Although plaintiff does not address the issue of a "final judgment on the merits," we cannot find that the first requirement is satisfied. There is a split between courts in Illinois on the question of whether a settlement agreement operates as a final judgment on the merits. See *Jackson v. Callan Publishing, Inc.*, 356 Ill. App. 3d 326, 340 (2005) (noting split of authority). We agree with the cases that do not view a settlement agreement as a final judgment on the merits and therefore cannot find the settlement agreement in *Barnes* to satisfy the first requirement for *res judicata*. *Goodman v. Hanson*, 408 Ill. App. 3d 285, 300 (2011). "[A]n agreed order is not a judicial determination of the parties' rights, but rather is a recordation of the agreement between the parties." *Kandalepas v. Economou*, 269 Ill. App. 3d 245, 252 (1994). Since there was not a final decision on the merits in the *Barnes* class action, we cannot find that it precludes the plaintiff's claims under a theory of *res judicata*.

¶ 30                          C. Binding Effect of the Consent Decree

¶ 31        In addition to arguing that plaintiff's claims were barred by *res judicata*, defendant's motion to dismiss also argued that plaintiff's "claims under the Illinois Human Rights Act were specifically released by virtue of his failure to opt out of that litigation." Although the trial court granted the motion on the sole basis of *res judicata*, we can affirm on any basis found in the record. *Studt v. Sherman Health System*, 2011 IL 108182, ¶ 48 (recognizing that "an appellate court may affirm a trial court's judgment on any grounds which the record supports [citation], even where those grounds were not argued by the parties").

¶ 32                          1. Properly Considered Under Section 2-619

¶ 33        The defendant's motion to dismiss under section 2-619(a) does not specify a subsection of section 2-619(a) to support its claim that plaintiff's claims were released by failing to opt out of the *Barnes* class action. Section 2-619(a) does contain a subsection which includes the claim that defendant made, in its motion to dismiss that, by failing to opt out of the class, plaintiff released his ability to sue defendant. That section is section 2-619(a)(6). The Illinois Appellate Court has held that a settlement can include a release when it is properly indicated through the use of the words " 'release,' 'discharge,' or 'payment in full.' " *Iloh v. Stein*, 226 Ill. App. 3d 644, 648 (1992) (finding that in order for a settlement to be considered a release "words of completeness, such as 'any and all claims' " must be present).

¶ 34        Section 2-619(a)(6) allows for dismissal when "the claim set forth in the plaintiff's

-6-

pleading has been released, satisfied of record, or discharged in bankruptcy." 735 ILCS 5/2-619(a)(6) (West 2010). Defendant argues in its motion to dismiss and then in its appellate brief that, by not opting out of the class, plaintiff released his ability to sue defendant for discrimination, because the consent decree included a waiver of the ability to sue in the future. Illinois case law holds that "a release or covenant may be set aside under certain circumstances if the agreement was entered into through a mutual mistake of fact." *Meyer v. Murray*, 70 Ill. App. 3d 106, 111 (1979) (citing *Martin v. Po-Jo, Inc.*, 104 Ill. App. 2d 462, 467 (1969), and *Welsh v. Centa*, 75 Ill. App. 2d 305, 311-12 (1966)). "Once the defendant establishes the existence of the document, legal and binding on its face, the burden shifts to the plaintiff to prove it invalid by clear and convincing evidence." *Meyer*, 70 Ill. App. 3d at 111. Here, defendant has established the existence of the *Barnes* consent decree, which was the settlement agreement entered by the United States District Court for the Northern District of Illinois. Thus, the burden shifts to the plaintiff to prove it invalid by clear and convincing evidence.

¶ 35    Plaintiff opposes the validity of the consent decree for three reasons: (1) there is not an identity of causes of action and, therefore, the claims in plaintiff's complaint were not included in the class and not waived through the consent decree, (2) the notice sent to plaintiff was inadequate, and (3) plaintiff's individual lawsuit was effectively notice of his intent to opt out of the class. We address each of his arguments below. If plaintiff's claims were part of the *Barnes* class action, included in the consent decree as claims that were released, and he failed to properly opt out of the class, then his claims are released under the terms of the consent decree. See *Iloh*, 226 Ill. App. 3d at 648 (holding that a settlement can operate as a release when it clearly indicates intent to do so).

¶ 36                      2. No Identity of Causes of Action

¶ 37    As noted above, plaintiff argues, first, that his lawsuit does not stem from the same group of facts as the *Barnes* class action because he focused on a claim of retaliation while the class action claims were about a pattern and practice of discrimination in promotion and training. Second, plaintiff claims that his individual experience with retaliation and discharge did not arise from the same events and facts as Barnes' individual discharge.

¶ 38    Plaintiff's complaint alleges that defendant (1) "discriminated *** against [plaintiff] *** with respect to training, discharge, privileges and conditions of employment on the basis of his race," (2) retaliated against plaintiff through "escalation of *** hostile work environment through hostility and ostracization *** and ultimately, termination," and (3) allowed plaintiff to be "subject to pervasive and continuous unwelcome harassment."

¶ 39    In response, defendant argues that the *Barnes* complaint included retaliation in discipline and other terms and conditions of employment. The *Barnes* third amended complaint stated, in paragraph 36 of its "Common Allegations" section:

> "On February 18, 2004[,] Barnes filed this federal class action lawsuit seeking redress for a class of African-American employees of CN Defendants that were victims of CN Defendants' racial discrimination, retaliation, and hostile environment, including but not limited to, discrimination and retaliation in appointments, selection

decisions, job assignments, promotions, training, discipline, testing, compensation benefits, evaluations, service ratings, and other terms and conditions of employment." (Emphasis added.)

¶ 40    In addition, the *Barnes* complaint included an individual claim for retaliation (count III) due to the fact that Barnes, the lead plaintiff in the class action, was fired by one of the defendants after filing the *Barnes* class action. Count III was entitled "Unlawful Retaliation and Termination," and stated "[t]his count is brought by Melvin Barnes in his individual capacity."

¶ 41    The complaint contained a total of three counts. As stated, count III was for an individual claim. Only counts I and II were class claims, and they were for violation of title VII of the Civil Rights Act of 1964 (count I) and for violation of the Civil Rights Act of 1866 (count II). Except for incorporating by reference the "Common Allegations," neither count referred to retaliation.

¶ 42    Based on both the "Common Allegations" and count III, defendant argues that the *Barnes* complaint included a class claim for retaliation. Plaintiff urges this court to view the class action to include only the claims that are common to all class members and, therefore, because Barnes's additional count was not pursued to benefit the class, the class settlement should not preclude other individuals, besides Barnes, from bringing claims of retaliation. In *Robinson v. Toyota Motor Credit Corp.*, 315 Ill. App. 3d 1086, 1093 (2000), we reasoned that "an individual claim, not common to the class, that could not have been raised [in the class action]" is not barred. While recognizing that the Illinois Supreme Court in *River Park* determined that a bar "extends to what was actually decided in the first action, as well as those matters that could have been decided in that suit," this court in *Robinson* determined that one of plaintiff's claims was not common to the class and thus could not have been brought in the first lawsuit. *River Park*, 184 Ill. 2d at 302; *Robinson*, 315 Ill. App. 3d at 1093.

¶ 43    However, the third amended complaint in the *Barnes* class action does include a claim for retaliation that is common to the class. Both counts I and II include a paragraph including all previous paragraphs as a part of the count. Count I states that "[p]laintiffs restate and incorporate by reference Paragraphs 1 through 60, above as part of this Count of the Complaint," and count II includes "Paragraphs 1 through 71." As stated above, with paragraph 36 quoted in full, the third amended complaint included a "Common Allegations" section which listed claims common to the class including claims of "racial discrimination, retaliation, and hostile environment." Therefore, both class counts (counts I and II) include by reference paragraph 36 in which the common claim of retaliation is alleged.

¶ 44    Plaintiff's allegations of a hostile work environment, discrimination with respect to training, privileges, and conditions of employment, and retaliation are in identity with the claims included in the *Barnes* class action complaint. Plaintiff's three counts are for "unlawful discrimination–race," "retaliation," and "hostile work environment." Each of those three claims is listed in paragraph 36 of the "Common Allegations" section of the *Barnes* third amended complaint, which lists claims for "racial discrimination, retaliation, and hostile environment," and is later incorporated into both of the class counts (counts I and II).

-8-

Both plaintiff's and the *Barnes* class action complaints include claims for racial discrimination, retaliation, and a hostile work environment and, therefore, the two lawsuits have an identity of causes of action.

¶ 45     Plaintiff is correct that his individual claim of retaliation arises out of a different series of events than the events underlying Barnes's individual claim. However, since we find that plaintiff's claim was included in the class claims, this does not affect our holding.

¶ 46                                    3. Insufficient Notice

¶ 47     Although plaintiff's argument focuses on the release not being adequate because the *Barnes* class action and his complaint did not have an identity of causes of action, defendant argues that the consent decree is the document that demonstrates plaintiff's claims were released. Illinois law requires the defendant to establish a document that is legal and binding on its face before the burden shifts to plaintiff to prove the document invalid. *Meyer*, 70 Ill. App. 3d at 111. Defendant presented a consent decree which was accepted by the United States District Court for the Northern District of Illinois, which is a legal and binding document. As noted above, the burden now switches to the plaintiff to prove it is invalid. *Meyer*, 70 Ill. App. 3d at 111.

¶ 48     Defendant argues that, by not opting out of the settlement agreement, plaintiff has released his claims against the defendants because each of plaintiff's claims is included in the consent decree. The *Barnes* consent decree disclosed what the class was settling for, how a class member could opt out of the settlement, and what rights the class member was waving by failing to opt out. The consent decree stated, in the section entitled "Release":

> "Once the Court enters its Final Approval Order, all Class Members who have not opted out, will be bound by the terms of the proposed Settlement with regard to these claims and will have released and forever discharged [CN Defendants] for any employment discrimination claims based on race that were made in the Third Amended Complaint. This release includes all claims of racial discrimination, retaliation and hostile working environment including but not limited to discrimination and retaliation in appointments, selection decisions, job assignments, promotions, training, discipline, testing, compensation, benefits, evaluations, service rating, termination, racial harassment, intimidation and other terms and conditions of employment." (Emphasis added.) Barnes v. Canadian National Railway Co., No. 04-C-1249, Proposed Notice of Class Action Settlement and Hearing (Oct 21, 2009).

The consent decree specifically stated that it included "all claims of *** retaliation in *** termination." Therefore, plaintiff is bound by the settlement made in the decree if he failed to opt out of the class.

¶ 49     The consent decree itself–and the notice sent to all class members, and received by plaintiff–stated that the defendants were willing to settle and comply with an injunction requiring equality in notice of training and advancement possibilities, prohibiting retaliation against members of the class, and prohibiting harassment based on race. In consideration for the injunction, the class members were bound by the consent decree and prohibited from filing lawsuits in the future regarding the same claims as those included in the *Barnes* class

action. The above-quoted section of the notice included each of the claims the members are precluded from bringing in the future. Even if a claim of retaliation was not specifically included as a class count in the *Barnes* class action, it was specifically listed in the consent decree as a claim that was released. The list of claims included in the "Release" section of the notice of consent decree indicates that plaintiff's claim was waived by his not opting out of the class.

¶ 50    Since defendant has established the existence of a legal and binding document, the burden is on the plaintiff to demonstrate that the document is invalid. Plaintiff argues that the consent decree is invalid because he did not receive adequate notice of the settlement or of the fact that his right to sue individually would be waived. Plaintiff testified that he did not receive the notice until a few days before Christmas, which was after the deadline for opting out. However, because the parties extended the deadline for opting out to January 22, 2010, plaintiff could still have opted out of the settlement after receiving the notice at the end of December 2009.

¶ 51    Plaintiff urged the circuit court to find that in order for the notice to be adequate the defendants should have been required to notify him through his attorney because at the time of the notification it was known to defendants that plaintiff had representation and that the rules of practice and procedure in the United States District Court for the Northern District of Illinois require that an individual who is represented by counsel be contacted through counsel. N.D. Ill. Loc. R. 83.54.2 (valid through June 1, 2011) (amended by N.D. Ill. Loc. R. 83.50). Defendant refutes the application of the rule saying that plaintiff was not represented by counsel in regards to the *Barne*s class action.

¶ 52    The United States District Court Rules for the Northern District of Illinois, where the *Barnes* class action was heard, require that "[d]uring the course of representing a client a lawyer shall not communicate or cause another to communicate on the subject of the representation with a party the lawyer knows to be represented by another lawyer in that matter unless the first lawyer has obtained the prior consent of the lawyer representing such other party or as may otherwise be authorized by law." N.D. Ill. Loc. R. 83.54.2 (valid through June 1, 2011) (amended by N.D. Ill. Loc. R. 83.50 (following Ill. Rs. Prof'l Conduct R. 4.2 (2011)). The rules for the United States District Court for the Northern District of Illinois specify that the requirement of notice on an attorney may be waived if there is another method which is "authorized by law." The district court in the *Barnes* class action instructed the defendants on how to carry out the notice process and specifically required that a copy of the consent decree and waiver form be mailed to each individual class member at his or her last known address. The district court did not require the defendants to determine which class members had attorneys before sending the notice of the consent decree and this court will not read that requirement into the notice process.

¶ 53    Plaintiff also argues that notice of the consent decree required actual notice on his person, claiming that in a class action, absent class members seeking nonincidental money damages "are entitled to personal notice and opportunity to opt out." (Internal quotation marks omitted.) *Gates v. Towery*, 456 F. Supp. 2d 953, 963 (N.D. Ill. 2006). Plaintiff received notice at his current address and was provided with an opportunity to opt out of the class. The notice received by plaintiff was adequate because the Illinois Supreme Court has held

that due process does not require individual notice to every member of the class in all circumstances. *People ex rel. Wilcox v. Equity Funding Life Insurance Co.*, 61 Ill. 2d 303, 312 (1975); see also *People ex rel. Hartigan v. Illinois Commerce Comm'n*, 148 Ill. 2d 348, 416 (1992) (Freeman, J., concurring in part and dissenting in part) (stating "it is well established, as a matter of due process, individual notice to every class member is not required in all circumstances"). The Illinois Code of Civil Procedure also does not require notice on an individual in class action cases. See 735 ILCS 5/2-803 (West 2010). The Illinois Code of Civil Procedure requires only "notice as the court deems appropriate." 735 ILCS 5/2-803 (West 2010).

¶ 54  Defendant's claims administrator testified to providing notice in the exact manner required by the district court, which did not require actual notice. The district court has also held that an individual "is bound by the terms of the settlement because notice to the class was reasonable." *Purnell v. Sheriff of Cook County*, No. 07 C 7070, 2009 U.S. Dist. LEXIS 37302, at *7-8 (N.D. Ill. May 4, 2009) (citing *Fontana v. Elrod*, 826 F.2d 729, 731-32 (1987) ("While the notice must be adequate, it is not necessary that each member of the class actually receive that notice.")). The federal district court determined in the *Barnes* class action that notice by first-class mail to the most recent address of each class member was adequate notice, and the circuit court of Cook County agreed after holding an evidentiary hearing regarding the system of notice.

¶ 55  Based on the testimony of the claims administrator at the evidentiary hearing, it is apparent that the system of notice was designed to ensure the most success in notice delivery. The claims administrator testified that the notices were mailed "to the most up-to-date address that [they had] for the class members" "by way of First Class mail," and when notices were returned because they were undeliverable the claims administrator "update[d] the address and then remail[ed] the notice." According to the records of the claims administrator, plaintiff was sent the "notification on October 28" and the notice was not returned. Due process and the Federal Rules of Civil Procedure require that notice be "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). Due to the large scale of the class action, the system of the claims administrator to determine the most up-to-date address and resend any returned notices was the "best notice that [was] practicable under the circumstances." Although plaintiff testified that he did not receive the mailed notice until after the date had passed to opt out of the consent decree, the testimony provided to the circuit court concerning the system of notification indicates that the procedure was proper and therefore notice was adequate.

¶ 56  This is not a case where a member of a class claims that he never received notice of a class action settlement. Here the plaintiff claims that the notice came to him late via the United States Post Office and there was no time to opt out of the class. He claims that he received the notice approximately three days prior to Christmas and the opt-out was to be postmarked on or before December 9, 2009. However, the opt-out date was extended to January 22, 2010 and plaintiff made no attempt to contact any of the attorneys representing the class or the claims administrator and totally disregarded the notice. By doing so he would have found that he had more than sufficient time to opt out of the class.

¶ 57        **4. Plaintiff's Lawsuit Was a Substitute for Notice**

¶ 58  Plaintiff's final argument is that, although he did not officially opt out of the class action, the fact that he had filed an individual lawsuit against defendant was evidence of his "intent to pursue remedies independently and not as a part of the class." *In re Brand Name Prescription Drugs Antitrust Litigation*, 171 F.R.D. 213, 216 (N.D. Ill. 1997) (allowing for an individual lawsuit filed before the opt-out date to replace the formal opt-out requirement). Defendant argues that, in order to properly opt out of the class, plaintiff had to complete the opt-out form. Defendant also argues that, even if filing an individual lawsuit was enough to signal the intent to opt out, plaintiff's lawsuit was not officially served on defendant until after the deadline for opting out had passed. "[T]he prevailing view [adopted by this court] is that pending litigation is not a substitute for compliance with judicially ordered exclusion procedures in a class action." *Robinson v. Toyota Motor Credit Corp.*, 315 Ill. App. 3d 1086, 1094-95 (2000) (finding that "[j]udicially ordered exclusion procedures and opt-out deadlines ensure that class defendants can rely on the membership of a class becoming fixed by a certain date and that such members will be bound by the resulting outcome of the class action"). The district court in the *Barnes* class action had decided what the proper system for notice should be and how an individual would be able to opt out of the class. Plaintiff was notified by the method required by the district court and failed to comply with the opt-out procedure as specified in the notice. Illinois law indicates that a pending litigation is not a substitute for judicially ordered exclusion and therefore plaintiff's individual lawsuit was not sufficient to indicate his intent to opt out and he is bound by the terms in the consent decree.

¶ 59  Plaintiff released his claims by not opting out of the *Barnes* class. First, the consent decree was binding and included plaintiff's individual claims. Second, the notice was adequate. Third, filing an individual lawsuit is not a substitute for properly opting out of the class.

¶ 60             **D. Equity**

¶ 61  Plaintiff also argues that, because *res judicata* must be consistent with theories of justice and equity, precluding him from completing his suit against defendant would provide him with no means for relief since he received no portion of the *Barnes* monetary settlement and does not benefit from the injunction entered in that case. We previously explained in this case that we find that plaintiff is not precluded because of *res judicata*; plaintiff is precluded because he did not opt out of the class action. The class action in *Barnes* was settled with an injunction which required defendants to initiate equal hiring and promotion practices and to make training opportunities available to African-American employees which had previously been provided only to white employees. Since plaintiff is no longer with the railroad, the injunction will not help him. As for the monetary award, the consent decree indicates that "[t]he amount from the Settlement Fund to be paid to each Class Member [who file timely and valid claim forms] shall be calculated based on the total number of days each Class Member was employed by Railroad between February 18, 2000 and the Preliminary Approval Date." Plaintiff argues that the monetary award would not have adequately compensated him because he sought "lost wages from the time of his wrongful termination

-12-

through the present, until such time as he obtains a position which adequately mitigates his wages from Defendant." Despite the fact that plaintiff does not benefit from the injunction and does not believe he could have been adequately compensated by his portion of the monetary settlement, he did have an opportunity to file a claim form to receive some portion of the settlement or to opt out of it, or to object to the settlement itself.

¶ 62    After the consent decree, plaintiff claims he is left with no ability to sue or to collect adequate compensation for his claimed discrimination, retaliation, and hostile work environment if his case is dismissed. The Seventh Circuit has discussed the purposes of claim preclusion and the equitable goals of the court system in an attempt to find a balance. See *Jones v. City of Alton*, 757 F.2d 878, 885 (7th Cir. 1985) (stating " 'while the purpose of the doctrine is to prevent a party from litigating the same issue twice, it should not be used to preclude a party from litigating the matter at all' " (quoting *Gay v. Open Kitchens, Inc.*, 100 Ill. App. 3d 968, 972 (1981))).

¶ 63    In *Jones*, the Seventh Circuit determined that the defendant had not met its burden of "showing with clarity and certainty that the issue was or could have been determined by the prior judgment." *Jones*, 757 F.2d at 886. The court further held that "the Illinois courts have a policy not to apply claim or issue preclusion under circumstances where to do so would be inequitable or unjust–either because the party against whom the prior judgment is asserted did not have a fair opportunity to litigate the issue or because the basis of the prior court judgment is not clear and convincing." *Jones*, 757 F.2d at 886. In this case, the consent decree was clear and convincing about which issues were decided and what the members of the class were waiving by failing to opt out. Plaintiff did not opt out, attempt to opt out, or petition the court for an extension to the opt-out period. Therefore this case is distinguishable from Jones, where the plaintiff was prevented from presenting particular evidence. *Jones*, 757 F.2d at 886 (finding that "plaintiff was prevented from presenting his evidence on the mistaken theory that racial discrimination was irrelevant to his discharge"). In the case at bar, plaintiff had an opportunity to object to the class or opt out and did not.

¶ 64    This case is also distinguishable from *Gay v. Open Kitchens, Inc.*, 100 Ill. App. 3d 968, (1981), cited by plaintiff. *Gay* involved a personal injury action against two defendants, Gullo International (Gullo) and Open Kitchens. *Gay*, 100 Ill. App. 3d at 969. After the trial court granted summary judgment in favor of Gullo, Open Kitchens filed a third-party indemnification complaint against Gullo to recover the amount that it owed Gay. *Gay*, 100 Ill. App. 3d at 970. Gullo attempted to use collateral estoppel, or issue preclusion, to argue that the third-party complaint was precluded by the trial court's grant of summary judgment, which dismissed Gay's claims against Gullo. *Gay*, 100 Ill. App. 3d at 970. The trial court granted Gullo's motion to dismiss under the theory of collateral estoppel and this court reversed. We found that, because defendants were not previously adversaries, they had no prior opportunity to bring claims against one another for indemnity. *Gay*, 100 Ill. App. 3d at 971. We stated if "summary judgment were to collaterally estop Open Kitchens as to its claims against Gullo, then Open Kitchens' rights against Gullo were adjudicated with no right of review, which would clearly be an unjust result." *Gay*, 100 Ill. App. 3d at 971. Here, unlike in *Gay*, plaintiff was not unable to bring his claims. Instead, plaintiff did not opt out, object to the settlement, or request an extension to opt out of the class.

-13-

¶ 65    Thus, we do not find persuasive plaintiff's claims that he is entitled to some type of equity.

¶ 66                                    III. CONCLUSION

¶ 67    Plaintiff's claims were released by the consent decree under section 2-619(a)(6) because plaintiff's claims of racial discrimination, retaliation, and hostile work environment were all included in both the *Barnes* complaint and the "Release" section of the *Barnes* class action consent decree. Plaintiff was thus a member of the *Barnes* class and failed to opt out.

¶ 68    Affirmed.

¶ 69    JUSTICE GARCIA, specially concurring:

¶ 70    I differ with the majority on the reason the circuit court correctly dismissed the plaintiff's complaint. If, as the majority finds, the consent decree entered in the class action settlement included all of the plaintiff's claims, then I submit the plaintiff's complaint is barred by *res judicata* as the circuit court ruled. See *Wiencek v. Woodfield Ford Sales, Inc.*, 232 Ill. App. 3d 471 (1992). I find the instant appeal falls within all fours of *Wiencek*.

¶ 71    In *Wiencek*, the plaintiff filed a complaint against the auto dealership individually and on behalf of others similarly situated. The circuit court ruled the *Wiencek* complaint "was barred by a settlement and judgment reached in an earlier class action suit." *Id.* at 472. The circuit court dismissed the entire complaint, including plaintiff's individual claim, as "barred by the settlement and judgment [reached in the first suit]." *Id.* at 473. We affirmed the dismissal based on *res judicata*. *Id*.

¶ 72    I agree with the majority "that plaintiff's claim was included in the class claims." *Supra* ¶ 46. I also agree that "the consent decree [entered in the Barnes class] was binding [on the plaintiff]." *Supra* ¶ 61. Given those two findings, I submit *res judicata* applies. *Wiencek,* 232 Ill. App. 3d at 475.